## 9448

### BASS v. WESTERN UNION TELEGRAPH CO.

#### (90 S. E. 155.)

1. PRINCIPAL AND AGENT—EXISTENCE OF RELATION—QUESTION FOR JURY.—Contention that the Court erred in submitting to the jury the question of agency of a witness for defendant for the reason that the *prima facie* cause made by plaintiff was rebutted cannot be sustained, how much evidence is necessary to overcome a presumption or *prima facie* showing being for the jury.

2. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.—In an action for the loss of an option on land resulting from defendant's delay in transmitting a telegram, any error in admitting testimony that plaintiff had been trying to get the land for a long time, was cured by an order *nisi* on motion for new trial, reducing the verdict to specific items of damage.

3. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.—Any error in admitting evidence of an increased offer by plaintiff for the land, to show damages, was cured by an order *nisi* reducing the verdict to specific items.

4. TELEGRAPHS AND TELEPHONES—DELAY IN TRANSMISSION OF MESSAGE—
ACTIONS—EVIDENCE.—Testimony of plaintiff's agent, to whom the
owner of the land had made an offer to extend the option for $25,
that he could have met the condition and would have extended the
option if he had heard from plaintiff, was admissible.

5. TELEGRAPHS AND TELEPHONES—DELAY IN TRANSMISSION OF MESSAGE—
ACTIONS — PROOF. — Evidence that one to whom a message was
delivered on a day named to be telephoned to defendant's telegraph
station was defendant's agent, was sufficient to support the allega-
tion that the message was sent on that day, though it was not received
at the telegraph station until the next day.

6. TELEGRAPHS AND TELEPHONES—DELAY IN TRANSMISSION OF MESSAGE—
LIABILITY OF COMPANY.—A telegraph company's liability for delay
in the transmission of a message, resulting in plaintiff's loss of an
option on land, was not affected by the surrender of the option by
plaintiff's agent between 3 and 5 o'clock of the last day of the
option, the day following delivery of the message to the company,
where the message was not delivered to the addressee till after the
option expired.

7. TELEGRAPHS AND TELEPHONES—DELAY IN TRANSMISSION OF MESSAGE—
ACTIONS—INSTRUCTIONS.—In an action for delay in transmission of a
telegram, an instruction that if one to whom the message was deliv-
ered by plaintiff to be telephoned to a telegraph station was not
defendant's agent, the company is not liable for anything he did till
the company actually received the message is not objectionable as
implying that the company would be liable for his acts after it
received the message whether he was its agent or not.

8. TELEGRAPHS AND TELEPHONES—DELAY IN TRANSMISSION OF MESSAGE—
ACTIONS—INSTRUCTIONS.—Where the addressee of a telegram inquired
for it at 8 a. m., at 12 m., and between 2 and 3 p. m., all during office
hours, and failed to receive it, waiver of office hours could have no
effect, in an action for delay in delivery of the message, and an
exception by the telegraph company to an instruction relating thereto
cannot be sustained.

Before SHIPP, J., Florence, July, 1915.    Affirmed.

Action by F. G. Bass against the Western Union Tele-
graph Company. From a judgment for plaintiff, defendant
appeals.

*Messrs. Willcox & Willcox; S. M. Wetmore* and *H. E.
Davis*, for appellant, cite: *As to evidence to show agency:*
72 S. C. 251.    *Explanation of delay:* 87 S. C. 174; 77 S. C.

148; 84 S. C. 54.   *Measure of damages:* 70 S. C. 16; 74
S. C. 557; 60 S. C. 201; 53 S. C. 410.   *Speculative dam-
ages:* 76 S. C. 345; 40 S. C. 524; 65 S. C. 490.   *Reason-
able office hours:* 71 S. C. 303 & 386; 77 S. C. 378; 83 S. C.
8; 75 S. C. 267.   *Special contract:* 70 S. C. 522; 76 S. C.
529; 73 S. C. 522.

*Mr. Philip H. Arrowsmith,* for respondent.   *As to evi-
dence of action had telegram been delivered:* 69 S. C. 534;
60 S. C. 201; 77 S. C. 59.   *Presumption arising from
delay:* 75 S. C. 97 & 187; 90 S. C. 536; 84 S. C. 482; 69
S. C. 545; 70 S. C. 83 & 418; 77 S. C. 404.   *Contract:*
37 Cyc. 1694; 78 S. C. 424.   *Presentation of request to
charge:* 78 S. C. 398; 88 S. C. 164.

July 7, 1916.
The opinion of the Court was delivered by MR. JUSTICE
FRASER.

This is an action for damages for the delay in the trans-
mission and delivery of a telegram from Skipwith, Va., to
Cowards, S. C.   The plaintiff was in Virginia and desired
to purchase a tract of land in this State and empowered his
agent here to take an option on a tract of land here.   On
a certain Thursday his agent delivered to the agent of the
defendant at Cowards, S. C., a message which read, "Bought
option, expires Friday 9th.   Wire instructions."   Signed
A. McDuffie.
The defendant seems to have no office at Skipwith, but
had two nearby offices, one at Clarkesville and the other at
Chase City.   From these offices the message is sent by tele-
phone to Skipwith.   This message was phoned to Mr.
Stembridge, the agent of the railroad at Skipwith.   Mr.
Stembridge carried the message to the house at which the
plaintiff was staying and left it there for the plaintiff.
Later in the evening of Thursday, the plaintiff went to

Skipwith and left with Mr. Stembridge a reply message, "Hold option. Coming Saturday night." The plaintiff paid the charges on the reply message to Mr. Stembridge, who undertook to have it transmitted to Mr. McDuffie. Mr. Stembridge called Clarkesville and Chase City Thursday night, but failed to get either, as the offices had closed. On Friday morning Mr. Stembridge called Chase City and some one answered, but said the agent was out. The office at Chase City should have opened at 8 o'clock. Several calls were made for Chase City, but the operator was still out. Finally a lady who was "the agent of the telegraph company as cashier in the office" at Chase City took down the message and put it on the operator's table. The cashier said, "I carried it to the operator's desk and put it there, as I usually did." Why the operator was not in his office and way the cashier did not take the message earlier in the day, as was the custom, does not appear. The message did not get to Cowards until 3:25 p. m. on Friday. It was not delivered until Saturday morning.

The record tends to show that Mr. McDuffie called up the agent of the defendant Friday morning and was asked if an answer had come, and was informed it had not. That the operator was requested to phone the answer to Mr. Evans' home as soon as it came, but that Mr. McDuffie did not get the answer until Saturday morning. The operator at Cowards stated that while he was not asked to phone the message to Mr. Evans' place, he did call the Evans place, but did not get it. There was testimony that no call had been received at the Evans place. In the afternoon of Friday, Mr. McDuffie went to Florence, where he met the vendor, who offered to extend the option to Monday for $25. Mr. McDuffie having no instruction from the plaintiff to renew the option, let it expire. The plaintiff failed to make the purchase and brought this action for damages. The verdict was for the plaintiff, and was reduced under an order

for a new trial *nisi.*    The defendant appealed under several exceptions, but abandoned some of them.    Those not abandoned will be considered.

1. "Because his Honor, the trial Judge, erred, it is respectfully submitted, in allowing the jury to pass upon the question of agency of the witness, Stembridge, when it was clearly shown by the whole evidence that he was not such an agent, for even if the testimony introduced by plaintiff had raised a presumption or made out a *prima facie* case of agency, it was certainly rebutted and completely destroyed by the testimony of Stembridge himself, who testified directly that he was not the agent, nor had he at any time received remuneration for his services; and also by the testimony of Miss Yancey, to the effect that there was no telegraph office of the defendant company in Skipwith, and that Stembridge was not the agent of the defendant.    So any presumption which may have arisen as to Stembridge's agency was fully and completely rebutted and destroyed by direct and positive evidence in reply, leaving no issue of agency to go to the jury."    This exception cannot be sustained.    How much evidence is necessary to overcome a presumption or *prima facie* showing is a question for the jury.

2. "Because his Honor erred in admitting in evidence the testimony of plaintiff, on his direct examination, over the objection of defendant, where he was asked, 'Had you been trying to get that land for some time?'    To which he answered, 'Yes, sir; and this was the first opportunity I had had,' when such testimony was irrelevant and immaterial, in that plaintiff was suing on an alleged cause of action based on the fact that defendant had prevented him from purchasing land under a certain option; therefore, such testimony, as is here complained of, was highly prejudicial to defendant in clouding the jury's minds and tending to enlarge plaintiff's grounds for dam-

ages." Even if this was error, it was cured by the order *nisi,* which reduced the verdict to specific items of damage.

3. "Because his Honor erred, it is respectfully submitted, in allowing the plaintiff to testify, over defendant's objection in answer to the question, 'Since you have been here, have you made an offer to Mr. Finklea for that land?' 'I offered him $200 profit on what he sold it for and he sold it for $1,500.00,' in that same was irrelevant, tending to show damage that was not alleged in the complaint nor provable, for the difference in market value was the test."

"(N. B.)—In this exception there is also a typographical error, it being printed '$2,000.00,' whereas it should be '$200.00.'"

This exception cannot be sustained for the reason that not only did his Honor cure any harm by the order *nisi,* but he really ruled out the testimony. There was no motion to strike it out. The fourth and fifth exceptions complain of a like error and are overruled for the same reason.

4. Exception VI. "Because his Honor erred, it is respectfully submitted, in admitting in evidence, over defendant's objection, the following testimony, viz.: 'Q. If you had heard from Mr. Bass that he was coming to hold the option, and had Mr. Finklea refused to extend the option, would you have paid the purchase money? The Court: You cannot ask him what he would have done if Mr. Finklea had refused; you can ask him if he would have paid the option. You can show that he made an effort to keep that option open. Q. If you had received this answer to your telegram in time, would you have extended the option? A. Yes, sir. Q. Were you prepared to meet the conditions proposed by Mr. Finklea to extend the option? A. Yes, sir. Q. If you had received that telegram would you have extended the option? A. I would.' In that such testimony was irrelevant, immaterial

and grossly speculative, and also because of the fact that such an extension, even if given, could not have been the basis of a cause of action for the reason that there was no consideration therefor, and consequently could not have been enforced in law." This exception is overruled. The witness knew whether he had the power to comply with the demand for the extension of the option. No one else knew whether he would have complied or not. The basis of the action was the loss of the purchase, and there was no other way to prove it.

Exception seven is abandoned.

5. Exception VIII. "Because his Honor erred, it is respectfully submitted, in refusing to direct a verdict in favor of the defendant at the close of the whole case, as to the cause of action based on negligence, for the reasons stated as the grounds of said motion, which were as follows:

(1) That there was no negligence shown as a proximate cause of any damages to the plaintiff. (a) The complaint alleges that the telegram was sent on the 8th from Skipwith, Va., when the entire proof shows that it was sent on the 9th. (b) The option expired on the 9th, and between 3:00 and 5:00 on the 9th the option was surrendered. (c) Even if the telegram had not been delivered, the damages sought to be recovered are merely speculative, because there is no testimony going to show that the option would have been renewed under the terms of the telegram" (a) If Mr. Stembridge was the agent of the defendant, the proof is sufficient. (b) It is very manifest from the testimony that the word "surrender" was used to express the idea of a failure to renew. Inasmuch as the message was not delivered until the option expired, a different construction would not avail the defendant. (c) The testimony shows to the contrary. This exception is not sustained.

6. Ninth exception. "Because his Honor erred, it is respectfully submitted, in giving the jury the following instruction: 'If, on the other hand (and you are governed

by the preponderance of the evidence), the plaintiff is bound to show you that he was the agent of the company, but if he was not the agent of the company, the company is not responsible for anything he did until the company actually received the message for transmission at Chase City. In other words., suppose I undertake to go and deliver a message for a friend of mine here, or a stranger, and he pays me the money for the message, and I go to Timmonsville for him, the telegraph company would not be responsible for any act of mine until they actually receive the message for transmission at Timmonsville.' This instruction was erroneous, misleading and gave the jury a very different view of the defendant's liability than (sic) we respectfully submit, was the law, in that such instructions plainly gave the jury to understand that the defendant would be liable for the acts of a third party after it received from him the telegram for transmission, whether he was agent or not, when, under the law, the defendant would not be responsible for his acts at any time, unless he were the agent of the said defendant." This exception cannot be sustained. The charge does not bear that interpretation. The plain meaning is that the telegraph company is only responsible for what occurred after it received the message.

7. Exception XI. "Because his Honor erred, it is respectfully submitted, in charging the jury as follows: 'Mr. Arrowsmith: But, may it please your Honor, the company may waive its office hours. The Court: Yes. A waiver is this: That, although they have office hours, yet if they undertake to send the message outside of those office hours, they are bound by it. They can waive it if they see fit to do it. If they undertook to send off a message outside of their office hours, if some one delivered it to Chase City outside of office hours, and the operator at Chase City undertook to send it off, the com-

pany would be bound by his act. So, according as you find the facts, write the verdict. Waiver is voluntary surrender of a known right. That is a question of fact. If he was simply trying to do the best he could to get it off, and he was bound to transmit it by phone, you take all those things into consideration and determine whether he acted with diligence or not.' This portion of his Honor's charge was erroneous, we respectfully submit, for the reason that it is not a waiver of office hours if the operator attempts to send a message outside of such hours (unless there is a positive contract so to do), for the defendant company is under absolutely no obligation or duty to transmit such message until office hours reappear, and habitual violations of such hours must occur before the company can be said to have waived the same." This exception cannot be sustained. Waiver of office hours could have no effect on this case. The Chase City office opened at 8 o'clock a. m. Appellant's argument states: "The addressee, plaintiff's agent, testified that the only efforts he made to get an answer to his telegram of the 8th was to phone the office at Cowards at 10 o'clock a. m., 12 m. and again between 2 and 3 p. m." There is a long explained delay from 8 o'clock a. m. to between 2 and 3 p. m., in which there was ample time to deliver the message and no dispute as to office hours.

The judgment is affirmed.

MESSRS. JUSTICES HYDRICK, WATTS and GAGE concur in the opinion of the Court.

MR. CHIEF JUSTICE GARY concurs in the result.