REX OIL CORPORATION *v.* CRANK.

Opinion delivered May 11, 1931.

*A. T. Davies* and *Reinberger & Reinberger,* for appellant.

*Verne McMillen, Fred A. Snodgress, M. V. Moody* and *Henry E. Spitzberg,* for appellee.

BUTLER, J.   The casualty out of which this lawsuit has arisen occurred in this way: two young women were journeying from Little Rock to Hot Springs in a Ford coupe when they were met by one Evans, an employee of appellant corporation, traveling in a truck of the appellant and coming from the opposite direction.   As Evans turned in the highway and while he was crossing the same for the purpose of driving to a nearby filling station, the Ford struck the truck about midway practically demolishing the car and seriously injuring its occupants.   This suit was brought by them against the appellant corporation on the theory that Evans, the driver of the truck, was an employee of the appellant corporation and at that time engaged in the furtherance of its business; that, while so engaged, Evans carelessly turned in the highway immediately in front of the approaching Ford so as to cause the collision, the appellees themselves at the time being in the exercise of ordinary care.

It is conceded that, on the issues raised by the pleadings and the testimony in the case, the court fully and fairly declared the law except as contended by the appellant, in its failure to grant a peremptory instruction directing a verdict in favor of the appellant.   The jury found for the plaintiffs, appellees here, in the sum of $5,500 for Ruth Crank and $5,000 for Irene Holcomb.

There are only two questions presented for our consideration on this appeal; first, the failure of the court to direct a verdict as requested by the appellant, and second, that the amounts of damage awarded were excessive. The testimony regarding the negligence of Evans, the driver of appellant's truck, and as to whether the appellees were exercising ordinary care at the time of the accident, is conflicting, but it is not seriously contended that the testimony was not sufficient to warrant the jury in finding that Evans was guilty of negligence. Indeed, we think the preponderance of the testimony establishes that fact, and that the appellees were not negligent themselves.

The principal contention and the one which has given us concern is that, while Evans might have been guilty of negligence at the time of the collision, the relation of master and servant between him and the appellant had been for the time suspended, and that, while the truck furnished him by the appellant was to aid him in the discharge of his duties, he was not so using it at the time of the collision, but for his own convenience and on a mission personal to himself and wholly disconnected from any service for his employer. It is the law of this jurisdiction, as settled in numerous decisions, that the master is responsible for the negligent act of his servant if such act occurs during the time the servant is engaged in the service of the master, although the act itself might have been unauthorized; but it is essential to the master's liability that the wrong complained of must have been occasioned by the negligent conduct of the servant who at the time was acting within the scope of his employment. An important exception to this rule is also found in numerous cases of this court, namely, that, although one may be a general servant of another, the master is not responsible for the negligent act of the servant where the latter steps aside from the discharge of his duty and engages in something entirely disconnected from the performance of services for his

master and of a nature purely personal to himself, even though the casualty may be the result of the negligent use of some instrumentality furnished the servant by the master for the conduct of his employment.

The rule and the exception are stated and fully discussed in *Sweeden* v. *Atkinson Improvement Co.*, 93 Ark. 397, 125 S. W. 439, 27 L. R. A. (N. S.) 124; *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229, L. R. A. 1918 D, 115; and in the very recent cases of *Hunter* v. *First State Bank of Morrilton*, 181 Ark. 907, 28 S. W. (2d) 712, and *Mullins* v. *Ritchie Grocer Co.*, *ante* p. 218. In those cases numerous decisions of this and other courts are cited which fully state, explain and illustrate the rule. The difficulty lies in the application thereof, as there is no definite rule by which it can be said that the acts of a servant are within or without the scope of his employment, each case of necessity depending upon its own peculiar facts and circumstances.

It is admitted that Evans was in the general employ of the appellant corporation, and that the truck in which he was traveling was the property of appellant committed to the custody of Evans for use in the prosecution of his duties; but the evidence on which appellant relied in the court below as a warrant for the request for a directed verdict and for a reversal of the judgment is this: Evans testified that on the morning of the day on which the collision occurred he had wholly abandoned the service of the master and was pursuing his journey on a purely personal matter, using the truck solely for his own convenience, it being his purpose and mission to convey his wife and child to Pine Bluff where his wife's father and mother resided that she might spend the week-end in their company; that, as a companion on the trip to Pine Bluff and back to Hot Springs on the same night, another person was riding in the truck with Evans and family; that he had in mind no business for the appellant corporation or the performance of any such along the way or at Pine Bluff nor on the return trip was any contemplated; that, as he pursued his way, his child became

thirsty, and he turned from the right side of the highway, on which he was traveling at an ordinary rate of speed, crossing to the left for the purpose of procuring a drink of water for the child from a filling station opposite when the collision occurred.

The testimony of Evans regarding his purpose for the journey was corroborated by that of his wife and his companion. This was all the direct testimony adduced with regard to Evans' mission. It is the contention of the appellant that this testimony was undisputed, and therefore brings the case within the exception above stated. We are of the opinion, however, that such is not the case. The testimony given by Evans and those with him in the truck was the only direct evidence relative to his actions and his motivation, but there was certain other evidence, not direct but circumstantial, which, after careful consideration and analysis, we have concluded raised an issue of fact on this proposition. In the first place, as we have seen, it is admitted that Evans was in the general employ of the appellant. He had been in its employ for a number of years and by gradual stages had risen until at the time of the accident he had become the manager of appellant's business within a given territory. He had charge of a filling station in Hot Springs from which he sold, both wholesale and retail, the commodities of the appellant whose home office was in the city of Pine Bluff where he had been accustomed at times to transact business of the appellant with his superiors, and it was to that city that he was going at the time of the collision. Among his customers was one McAtee, into whose place of business he was in the act of turning when the accident took place. It was the duty of Evans to sell McAtee oil and gas and to collect therefor, and, while both McAtee and Evans testified that at that time McAtee owed nothing to be collected nor was Evans delivering to him any commodity, still the mere fact that Evans was directing his course to the place of business of a customer was a circumstance to be considered by the jury in determining

what was the purpose of Evans on that occasion. Before leaving Hot Springs on that morning, Evans had placed in charge of his filling station there one McDonough, who testified that Evans was his boss, and that he had been placed in charge of the station with the information conveyed to him by Evans that he was going over to Pine Bluff on business. In that conversation Evans did not make any specific statement with regard to the business or for whom it was to be transacted, but it is not shown that Evans was engaged in any other business than that of his employer, and the truck in which he left was one belonging to his employer which he used for the purpose of calling on the trade and seeing different people in regard to the business of the appellant. "The doctrine is settled in this State that, if the automobile causing the accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time he was acting within the scope of his employment and in the furtherance of his master's business." *Mullins* v. *Ritchie Grocer Co., supra.*

We see therefore that there was a *prima facie* case made out that Evans was in the conduct of the master's business, which case was supported by the statement made by him to McDonough that he was going to Pine Bluff on business and the further fact that he was in the act of stopping at the place of business of a customer at the time of the accident. These circumstances, which were established by the testimony, raised certain inferences of fact, and, this being so, it was the province of the jury to weigh these inferences of fact with the conflicting direct testimony and to say whether such direct testimony overcame the inferences of fact raised by the circumstances proved. The court below did not err in submitting the case to the jury, and there is evidence of a substantial nature tending to support its verdict.

The verdict was not excessive. Mrs. Ruth Crank was the owner of the Ford coupe which was worth on the

market before the collision from four to five hundred dollars and afterward was not worth in excess of $75 or $100. The evidence tended to show that Mrs. Crank's right leg was broken and a hole knocked in the knee of her left leg; one of her ribs on the left side was broken which affected the left mammary gland; a severe blow was received over her heart and other cuts and bruises suffered. She was taken to a hospital where her leg was put in a metal cast. It was swollen to almost double its size and kept in the metal cast until the swelling subsided and then put in a plaster of paris cast for several additional weeks. She was in the hospital for over a month, and from there removed to the house of a friend where she continued in bed for a long time. The hospital bill amounted to over $100 and the physicians' bills are yet unpaid. She still suffers from her injuries, being unable to walk and stand upon her feet without pain.

Mrs. Crank's companion, Irene Holcomb, had no bones broken, but was lacerated in many places, so much so that it required 82 stitches to sew up the cuts, and was confined in the hospital 20 days. Her back was wrenched, and it has continued to give her pain since the accident. Some of her front teeth were shattered and a jaw tooth broken off. The skin was cut from the hairline on the forehead downward in a U-shape through the eyebrow and torn from the skull, hanging down over her face. The skin was replaced in position, but it has left a large U-shaped scar with one eye weakened and the lid drooping out of its normal position, thus seriously disfiguring her. While the scar may improve in appearance, it will remain permanently, and the area on the head in the vicinity of the scar is numb because of the disturbance of the nerves in that locality.

These were two young women whose vocation was that of waitresses. Their work required them to be on their feet through long hours, and a material part of their earnings which averaged $25 a week was in the nature of tips. Both of them were unable to work for several

months, and, while it was in the testimony that the ability of Miss Holcomb to work would not perhaps be permanently impaired, it is reasonable to think that she might be unable to secure employment in as favorable location as she could before because of such disfigurement. Unquestionably the shock to the nervous system of both these women must have been very great, and, coupled with otherwise severe physical injuries, the pain they endured, mental anguish, loss of time, the nature and extent of their injuries, leads us to conclude that the verdicts awarded are not greatly out of proportion, if any, to the damages sustained.

Affirmed.