Maxine Gonzales MOSQUEDA, Individually
and as Next Friend for her Minor
Children, et al., Appellants,

v.

ALBRIGHT TRANSFER & STORAGE
COMPANY, Appellee.

No. 15945.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 7, 1958.

Rehearing Denied Jan. 9, 1959.

Second Rehearing Denied Feb. 27, 1959.

Clyde & Barnes; Cantey, Hanger, Johnson, Scarborough & Gooch, and Charles L. Stephens, Fort Worth, for appellants.

Rawlings, Sayers, Scurlock & Eidson, and N. Lloyd Scurlock, Fort Worth, for appellee.

MASSEY, Chief Justice.

Suit was for damages resulting from a collision between defendant's truck, driven by an employee, and plaintiffs' automobile. The verdict of the jury acquitted plaintiffs of all negligence and convicted the driver of defendant's truck of negligence which was a proximate cause. Very substantial damages for personal injuries and death and property damage were found in plaintiffs' behalf. Furthermore, the jury found that at the time of the collision the driver of defendant's truck was its agent, servant and employee, acting within the scope and course of his employment.

The defendant filed a motion for judgment *non obstante veredicto* on the ground that as a matter of law the servant who was driving the defendant's truck at time of the collision was outside the scope and course of his employment and that the defendant, his master, could not be held liable under the doctrine of *respondeat superior*. The trial court entered judgment for the defendant in accord with the motion and the plaintiffs have appealed.

Judgment affirmed.

The parties will be denominated as in the trial court, with defendant's employee referred to as the servant and the defendant sometime referred to as the master.

Defendant was engaged in the trucking business, with its principal location being at Wichita Falls, Texas. Its servant was employed as a truck driver. His duties were principally in and around the City of Wichita Falls, though infrequently he made trips by truck from said City to various other places in the State of Texas. On the date of the collision in question, he was directed to haul a load of used telephone poles from Wichita Falls to Springtown, Texas. Under standard instructions, previously given the servant, he should have made his delivery and returned to Wichita Falls by the nearest route. Under usage and custom he was expected to take "time out" at mealtime to eat. He was not supposed to drink any alcoholic beverage while out with the truck.

In making the trip from Wichita Falls to Springtown, the servant necessarily traveled in a generally southern direction for approximately 60 miles to Jacksboro, Texas, thence in an easterly and southerly direction to Springtown, an additional 33 miles. If a person were traveling from Jacksboro to Fort Worth, Texas, he would travel this same 33 miles to Springtown, thence in a southerly and easterly direction into Fort Worth, traveling 10 miles from Springtown in order to get to Azle, and traveling 17 miles from Azle in order to get to downtown Fort Worth. This route is known as U. S. Highway 281—State Highway 199 between Fort Worth and Wichita Falls. Its total length is 120 miles. Another route between Fort Worth and Wichita Falls is known as U. S. Highway 287, which leaves Fort Worth going north on North Main Street, via Decatur and Bowie, Texas, and into Wichita Falls. Its total length is approximately 115 miles. U. S. Highway 287 is east of the route through Jacksboro.

Springtown is in what is known as a "dry" county. Beer is not available as a beverage in Springtown. Beer is available in Azle. After defendant's servant had unloaded the telephone poles at Springtown he decided to drive to Azle in order to drink a bottle of beer. The evidence raises the inference that he and his helper on the truck also intended to eat a meal at Azle, the time for the evening meal having arrived, but in any event they did not eat at Azle. They drove from Springtown to Azle and the defendant's servant and his helper did each drink one bottle of beer, but due to an impending difficulty with another patron of the establishment they decided to leave. In a discussion held between the defendant's servant and his helper at the time, it was decided to return to Wichita Falls by a route which would take them into the city limits of the City of Fort Worth to 28th Street, thence in an easterly direction over to North Main Street and Highway 287, and thence back to Wichita Falls. They also intended to have their evening meal (along with another beer) at a point along this route.

The evidence in the record showed that the defendant's servant labored under the mistaken opinion that the distance from Azle to Wichita Falls via the route so planned was about the same as the distance would have been had he driven back via Springtown and Jacksboro. As a matter of fact, it would have been between 15 and 25 miles further. Defendant's servant testified that at the time he determined on it he believed that it would be very little further, if any, by such route than to return via Jacksboro.

The servant, with his helper, proceeded to drive to Fort Worth. He intended to make a left turn at 28th Street, but when they reached the 28th Street intersection he failed to get over into the left-turn lane through an error of judgment and therefore was compelled to continue south on State Highway 199. After having done so, he did not attempt to turn around and return to the intersection and the route previously determined upon. There is testimony in the record that he stated to his helper that

he knew another "cut-off" (presumably a way to get over to North Main Street), but the record is silent about where this actually was, or was believed to be. The record does show that the servant continued to drive in the direction of downtown Fort Worth until he reached the intersection of 12th Street in Fort Worth where the collision occurred. There is a signal light at said intersection, but there is no evidence that it was intended to make a left turn thereat—indeed the evidence shows an approach to the intersection in the outer or right-hand lane, from which no left turn would ordinarily be expected to be made, when the brakes on the truck failed immediately before the moment of the collision.

■ In Texas the law is established to the effect that when a servant has completed the purpose for which he forsook his master's business and is returning to the area within the space-limits encompassing the duties of employment he is *not* to be considered as having resumed such duties. Where the facts unquestionably demonstrate either that the servant has completely departed from his work to accomplish some purpose of his own not connected with his employment, or that after such a departure he has not actually reengaged in his master's business, he is outside the scope of his employment, and as a matter of law in the field of torts there is no relationship of *respondeat superior* existent between the parties. Southwest Dairy Products Co. v. De Frates, 1939, 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854, and cases cited. See extensive annotations in 22 A.L.R. 1397; 45 A.L.R. 477; 68 A.L.R. 1051; 80 A.L.R. 725, and 122 A.L.R. 858.

■ Under the circumstances of the instant case, we have a situation where the servant forsook the master's business when he left Springtown and drove in the direction of Azle and Fort Worth. Although resisting any inference that the servant had departed the space-limits of his employment when he went to Azle, plaintiffs contend that if the servant be properly considered as having done so, nevertheless he should be considered as having actually re-engaged in his master's business because of his actions coupled with his state of mind. At least, it is the plaintiffs' contention, the question of agency became one of fact for the determination of the jury.

Essentially, plaintiffs' contention is that because the servant was of the opinion that it was almost as near to Wichita Falls from Azle to take the road into Fort Worth as far as 28th Street, thence east to North Main Street, and thence north via Bowie, Texas, to Wichita Falls,—even though he was grossly mistaken in such opinion—he should be treated and considered as having reentered the space-limits encompassing the duties of employment once he had traveled as great a distance from Azle as would be equal to the distance from Azle back to Springtown. At least, say plaintiffs, the situation should raise a jury question.

In view of our interpretation of the holding in the case of Southwest Dairy Products Co. v. De Frates, supra, we cannot agree with the theory of the plaintiffs. In our view, the holding has the effect of placing the servant outside the scope of his employment and the master beyond any liability in tort to be imposed under the doctrine of *respondeat superior* until it might properly be said that a question exists as to whether the servant had actually reengaged in the master's business—through a reentry of the space-limits of the duties of employment. We do not believe that a state of mind and opinion on the part of the servant to the effect that he had made such a reentry would be sufficient to make the agency status a question for the jury. Where the error of mind is so apparent, as in this case, it would be unjust for the law to permit any imposition of liability upon the master as such or as a principal in agency merely because of a mistake of mind on the part of the servant, when his mistake was made after he had made a complete departure from either relationship for a purpose not connected therewith. For this reason, we hold that

the matter was properly resolved as a matter of law, and that the court below correctly entered the judgment *non obstante veredicto* for the master.

However, even should we be mistaken in our conclusion aforesaid, the action of the trial court should be affirmed for an additional reason. Under the undisputed evidence, it was the opinion of the servant that his return trip to Wichita Falls would be about the same distance only if he made a left turn at 28th Street in Fort Worth, thence east to North Main Street, and thence north toward Wichita Falls. Also undisputed is the fact that through error on the part of the servant he found himself in a traffic lane at 28th Street where he could not make a left turn to go east. He continued in the direction of downtown Fort Worth until he reached the intersection of 12th Street, where the collision occurred. In view of the ordinary and customary numerical order of city streets, there would be a presumption, not rebutted, that the servant had traveled some considerable distance after having passed 28th Street before reaching the point of the collision. We mention this in view of an absence of proof in the record as to the actual distance involved. The only explanation of why the servant did not turn around after having passed 28th Street and upon a return to the intersection proceed in an easterly direction on 28th Street toward North Main Street was that he knew another way to get onto North Main. The most liberal interpretation of the record in behalf of the plaintiffs would be to view the situation as one in which the servant was either lost after he passed 28th Street and was headed toward downtown Fort Worth or had not reached the point for an alternative "cut-off". That being true, we are of the opinion that the burden of proof lay upon plaintiffs to reasonably justify the actions actually performed by the servant after having gotten off the route intended to be taken on the return trip. The burden not having been discharged, the situation necessarily subsisted that the servant voluntarily left his route (which would take him east and back to the north) and proceeded to travel toward the south, outside and still further away from the space-limits of employment even if the intersection of 28th Street be properly considered to fall within such.

The plaintiffs strenuously urge the proposition that in view of the presumption of agency on the part of the servant established prima facie through his operation of the master's truck, the jury was free to discredit his testimony bearing upon his intentions, etc. Since his testimony was the only direct evidence to the effect that he had departed from his course of duty, they point out the possibilities of injustice to plaintiffs generally where legitimate claims for relief in damages may be defeated through testimony of defendants' servants that they had departed the path of duty, even though the plaintiffs' prima facie cases have been made out and the jury disbelieves the servants' testimony. While we fully appreciate the position of the plaintiffs in the instant case, nevertheless we are of the opinion that the possibilities of resultant injustice could work as well to a defendant in such circumstances as to a plaintiff. The question of the allowability of an instructed verdict for a defendant principal upon evidence not directly contradictory of the presumption of agency, arisen through proof that a vehicle driver was an employee hired to operate the same, must sometimes be left for individualized handling by the trial judge in the exercise of his trained and reasonable judgment.

Plaintiffs admit that the presumption of agency so brought about vanishes when the master comes forward with positive evidence to the contrary, but contend, in view of Judge Alexander's observations in Houston News Co. v. Shavers, Tex.Civ. App.1933, 64 S.W.2d 384, 386, error refused, that it would only be when such a master has made a clean and clear disclosure of all the evidence apparently within his possession by introduction as wit-

nesses "All those who presumably would know the facts" that the presumption of agency might disappear, and then only when the evidence was positive to the contrary of the presumption. In the instant case, the plaintiffs point out that the servant's father, who was the employee of the same master (defendant here) and the man whom they claim gave the servant his last instructions relative to the trip, was not produced by the defendant as a witness.

An examination of the statement of facts discloses that the defendant partnership brought to the trial Richard Haas, one of the partners who employed the servant. He testified that on the occasion in question the defendant had no business for the servant to perform in Fort Worth, and that it was he who told the servant to take the telephone poles to Springtown. He further testified that when he was out of town only one other person, one Joe Clark, had direct control over the firm's employees, including the servant, but that Clark was not present at a material time on the day of the trip. The defendant offered the testimony of Mrs. Albright, one of the partners defendant, who testified that Mr. Clark was out of town on the day of the accident, and that she left the company premises at noon, which was before the time the trip to Springtown was made.

The record shows that the trial from which this appeal was taken was not the first trial of the case. There had been at least one prior trial. Under the circumstances of the case, as otherwise apparent, we believe the testimony of Mr. Haas was directly contradictory of the presumption of agency. Also contradictory of the presumption was the testimony of the servant. Of course, both were parties interested in resisting the claim presented by suit, for the servant was a named defendant along with his master. Under the circumstances, we are of the opinion that the rules of evidence relative to the rebutting of presumptions of the kind here considered would not operate to make erroneous the judgment entered. We do not believe that the failure to bring the servant's father to Fort Worth to testify would inhibit the entry of the judgment, for there is nothing to indicate that he had any authority over the matter of the servant's agency. Also, in our view, the records do not have the effect of conflicting with defendant's evidence against the presumption of agency, as contended by plaintiffs.

Judgment is affirmed.

## On Motion for Rehearing

The plaintiffs have filed a motion for rehearing which points out certain errors we have made in recitation of the facts, particularly in our elimination of Mr. Joe Clark as a person who could have been a witness in the case.

The motion is unusually thorough and persuasive, but after further search into the authorities we have reached the conclusion that our disposition on the original hearing was correct.

Essentially, our problem involves the consideration of presumptions and inferences as applied to the question of agency, and in this connection we are of the opinion that the following discussion is warranted.

■ Where agency is a matter for inference, the question of whether the inference is overcome would ordinarily be a question for the trier of the facts. It would only be when the evidence is of such character that only one reasonable deduction could be drawn therefrom that the court could resolve the question as a matter of law. See cases under the Ten-Year Supplement to 17 Tex.Jur., p. 252, "Evidence—Civil Cases," sec. 60, "(Presumption) Force and Effect—Rebuttal"; Ross v. Green, 1940, 135 Tex. 103, 139 S.W.2d 565.

■ Where agency is a matter for presumption, such presumption vanishes and ceases to have probative force or effect when positively contradicted. In such an

instance, the adverse party has the burden of proceeding with more or other evidence upon penalty for failure to do so of having an instructed verdict against him upon the issue. Page v. Lockley, Tex.Civ.App., Eastland, 1943, 176 S.W.2d 991. Beginning at page 998, Judge Funderburk goes into the distinction between inference and presumption, analyzing the leading cases. Though the judgment of the Eastland court was reversed at 142 Tex. 594, 180 S.W.2d 616, the basis of the reversal was the application of the principles discussed to the circumstances of the case there under consideration rather than upon any erroneous conception of the law on the part of the Court of Civil Appeals.

█ In the instant case, we have a presumption of agency upon the proof by the plaintiffs that the defendant's servant was driving its truck and that the servant had been employed to drive said truck. We have an inference of agency in view of the "Driver's Daily Log" prepared by the servant and delivered to and made a part of the business records of the defendant. We have also a circumstance justifying an argument to the jury by the plaintiffs that certain absent witnesses who reasonably should have knowledge bearing upon the question of such agency could not have aided the defendant's contention that no agency existed if they had appeared and testified. Under the circumstances of this case, we do not believe that the failure on the part of the defendant to produce said witnesses would amount to either an inference of the fact of agency or raise a presumption of agency.

However, when the inference of agency provided by the "Driver's Daily Log" became a part of the evidence in the case, the circumstances, (1) that the servant was employed to drive the truck and was driving the truck, and (2) that witnesses under the defendant's control who were in position to testify upon the matter of agency were not produced by the defendant, were before the jury and entitled to be considered by it in connection with the ultimate question if, in the light of all the evidence in the record, reasonable minds could differ as to whether the acts of the servant at the time and place of the collision were within the scope and course of his employment.

█ The initial presumption in the case before us, upon the matter of agency of the defendant's truck driver, arose by reason of the proof that the truck belonged to the defendant and the driver was the defendant's servant employed to drive the same. In view of the testimony of the servant as to what he did and as to his movements, etc. (disregarding the servant's own opinions and conclusions upon whether or not such constituted him an agent), it is our opinion that his testimony amounted to positive evidence that he was not acting within the scope and course of his employment at the time of the collision. In Texas, though certain exceptions are recognized, the general rule is that a presumption vanishes and ceases to have any effect upon the introduction of any proof which amounts to evidence sufficient to justify a finding against the fact presumed,—and that immediately thereupon the burden of proceeding and the burden of persuasion devolve upon him who theretofore had relied upon the presumption. Texas Law of Evidence, 2nd Ed., McCormick & Ray, sec. 53, "True Presumptions—Rebuttable Presumptions of Law." No exception is here involved and we are satisfied, therefore, that when defendant's servant testified about the facts the presumption of his agency for the defendant disappeared. Hudiburgh v. Palvic, Tex.Civ.App., Beaumont, 1954, 274 S.W.2d 94, writ refused, n. r. e. This case also holds that the mere right of the jury to disbelieve a servant's testimony that he was not an agent at a material time does not authorize it to believe the opposite of what his testimony imports. (Citing cases.)

In our original opinion, we commented upon the case of Houston News Co. v. Shavers, 1933, 64 S.W.2d 384, 386, error

refused, authored by Judge Alexander when he was on the Waco Court of Civil Appeals. We recited language "lifted" therefrom by the plaintiffs under their contention that in this case agency was a question of fact to be resolved by the jury because the defendant had not made a "clean and clear disclosure" of all the evidence apparently within its possession by producing all the witnesses who presumably would know the facts. We then discussed the failure of the defendant to bring its servant's father and tender his testimony. In the course of the discussion, we stated that a Mr. Joe Clark, who had direct control over the firm's employees, including the servant, was not present at a material time on the day of the trip.

On the motion for rehearing, the plaintiffs point out an error on our part with reference to the statement made about Joe Clark. They demonstrate from the record that it was another man by the name of Clark who was out of town when defendant's servant left Wichita Falls, and that Mr. Joe Clark and the servant's father both talked with the servant immediately before he left on the trip in question. Indeed, it was shown that it was by Clark's leave that the trip to Springtown was made via Henrietta in Clay County rather than by going through Archer County, increasing the distance to Springtown by a mile or two.

 It is primarily because plaintiffs point out this circumstance that this discussion was deemed necessary. The plaintiffs present a very strong argument to the effect that under the language and holdings of the Houston News Co. v. Shavers, supra, case there was an inference upon which the jury was authorized to make the fact finding it did make as to the agency of the defendant's servant at the time of the collision. They contend for such authorization because of the defendant's failure to produce Mr. Joe Clark as a witness on the trial. Of course, they also repeat the same argument as to the absence of the father of the servant.

The only evidence in the record concerning instructions given by Clark immediately before the servant started his trip came from the lips of the servant himself. He testified that Clark was acquainted with the deviation whereby on the trip to Springtown he went by way of Henrietta. Naturally, this was pursuant to the conversation held and authorization received just before leaving Wichita Falls. The "helper" on the truck was not present at the time, according to his own testimony, and therefore it would clearly appear that we can disregard any possibility of his having heard the conversation. The defendant's servant further testified in response to questions, as follows: "Q. Did you have anybody at Azle that you had been instructed to contact or see for your employer, * *? A. No, sir. Q. When you came on to Fort Worth did you have anybody that you were supposed to contact or see here in Fort Worth * * *? A. No, sir."

The defendant tendered the testimony of Mr. Richard Haas and Mrs. E. E. Albright, superiors of defendant's servant in that firm's operations, both of whom testified that there was nothing which the servant was supposed to perform in the way of duty in Fort Worth and vicinity. The effect of their testimony was to establish that the servant was outside the scope and course of his employment at the time and place of the collision. It was clear that neither of these witnesses knew what conversation might have taken place between the servant and anyone in Wichita Falls immediately before the servant left that point.

For the purposes of this discussion, we concede that if the defendant had offered no evidence concerning the servant's authority to be where he was with the truck at time of the collision, even that of the servant himself, the situation might have created an inference of his agency upon which the jury might be authorized to pass. Nevertheless, we believe that such inference may not be said to exist where the defendant did produce some evidence on the question, though

failing to produce additional testimony from other witnesses within its control, where it does not further appear that such other testimony would have been more direct and explicit. It may seem that this statement contradicts the holding in the case of Houston News Co. v. Shavers, supra, but we believe that a careful analysis will lead to a contrary conclusion. Under the annotations in 135 A.L.R. 1375, "Presumption or inference from party's failure to produce witnesses within his control, as affected by his introduction of some evidence on the matter in question," we find the case of Marek v. Southern Enterprises, Inc., of Texas, 1936, 128 Tex. 377, 99 S.W.2d 594. It would appear from the case and from others to be found in the annotations that while in Texas it is proper for counsel for a litigant to comment upon the absence of some witness who might have been called by his adversary in corroboration of other witnesses who were offered by the adversary, and to argue that if the absent witness' testimony would have done the adversary's case any good it would have been produced,—it nevertheless is the law that a legal inference does not exist under such circumstances constituting in and of itself competent and sufficient evidence upon which a judgment might be founded.

We believe that it would be hazardous to adopt a rule such as advanced by the plaintiffs, and insisted upon under their construction of the Houston News Co. v. Shavers case. If the law should be established that a failure to call a witness, whose testimony may corroborate that of other witnesses produced, would raise the inference that the testimony of the witness would not have been in corroboration but to the contrary would compel a party to call every witness, however cumulative his testimony might be, at the peril of the failure to do so amounting to evidence upon which an adverse judgment might find support. Where it is not apparent that proof of a more direct and explicit character than that introduced by a litigant is or should be available to be offered by him, but where that introduced is as

direct and explicit upon the question as that not tendered, there should not be any inference that the evidence not introduced would be against his interest. Rather should it be assumed, in the absence of anything to the contrary, that the evidence, if tendered, would be in corroboration.

Applying such principle to the matter at hand, we believe it is *not* apparent that the testimony of Mr. Joe Clark or the servant's father would be any more direct and explicit on the question of whether the servant was acting within the scope and course of his employment (i. e., was defendant's agent) at the time of the collision than was the testimony which was introduced. Of course, on the matter of what was said in the course of the conversation which took place, Mr. Clark's testimony would have been more direct and explicit. However, it must be remembered that the conversation in itself is not the issue, but would only amount to evidence bearing upon the issue.

It was near the end of the cross-examination that the "Driver's Daily Log" was introduced into evidence. This instrument was offered by the defendant and was received over the objection of the plaintiffs. It was only by virtue of its reception that any inference of agency was raised. Counsel for defendant recalled the servant for the purpose of showing the presence of white paint on the rail pole attached to the truck. On the cross-examination immediately following, the plaintiff's counsel disregarded the subject of such inquiry and instead asked the witness if he kept a log book, if its purpose was to keep his time and mileage, and if he turned such in to his employer every morning. The witness stated that it was a fact, whereupon the cross-examination ceased. Immediately thereafter, defendant's counsel stated that he had the log book and would be glad to let opposing counsel see it. Opposing counsel was not interested. When the witness was taken back on redirect examination he testified that the entry sheet thereafter introduced was the part of the log book which showed

the witness' work and the hours he worked on the day in question, and that he made it out after he returned to Wichita Falls following the day of the collision, pursuant to his usual practice of making daily log sheets for every day whether he was on duty or off duty. He further testified that said "Driver's Daily Log" (for the day in question) was made out and filed, as all the daily log sheets were made out and filed, and kept in the office of the defendant. The instrument was received in evidence.

It is to be noted that there was no testimony to the effect that the entry was correct in any respect. Indeed, we note that the information reflected on the face of the instrument was inconsistent with and contradictory of all the other evidence of the defendant upon the matter of agency. Considered merely as a prior inconsistent statement, we are of the opinion that it could not be considered as substantive evidence of the truth of the facts therein stated. See McCormick & Ray, Texas Law of Evidence, 2nd Ed., sec. 688, "Prior Inconsistent Statements Not Usable as Substantive Evidence." But as a business record of the defendant, we believe that the recitals in the instrument raise the inference of agency in view of Article 3737e, Vernon's Ann. Civ. Sts. "Memorandum re record of fact," every condition raised by the agency was also thereafter laid by Professor Roy R. Ray entitled "Business Records—A Proposed Rule of Admissibility" in the Southwestern Law Journal.

On the cross-examination immediately following, the plaintiff's counsel disregarded the subject of such inquiry and instead asked the witness if he kept a log book. It is evident that we have reached the conclusion that the "Driver's Daily Log" was admissible, but from such conclusion it should not be inferred that we believe the jury would be entitled to pass upon it as evidence. We must remember that ordinarily the fact of agency must be evidenced before the agent's assertions of his agency can be received as an admission against interest on the part of his purported principal, and in the instant case we do not believe that the harmful statements of the entry import any admission by the defendant that its servant was

acting within the scope and course of his employment at the time of the collision. McCormick & Ray, Texas Law of Evidence, 2nd Ed., Ch. 17, "Exceptions to the Hearsay Rule—(8) Admissions of a Party", sec. 1164, "Agents and Employees, Including Corporate Agents and Officers."

The instrument in question, the "Driver's Daily Log", is a form prescribed by the Interstate Commerce Commission. Thereon appears a space to be filled in as the "Starting point or place" and a space to be filled in as the "Destination or turn around point or place", plus spaces for hourly tracings through a twenty-four hour period so as to show either "Off Duty", "Sleeper Berth", "Driving", or "On Duty (Not Driving)". There is no space on the form to show any period during which the driver could, if he cared to, indicate that he had departed from his employment in a deviation while driving and operating the truck. The defendant's servant had filled in the form so as to show Wichita Falls as his starting point and Fort Worth as his turn around point, and had marked the form as "Driving" between the time he left Springtown and the time of the collision, with the time from that of the collision on until midnight as "Off Duty".

On the matter of judicial notice we quote from McCormick & Ray, Texas Law of Evidence, 2nd Ed., sec. 172, "Federal Laws", as follows: "The Texas courts must take judicial notice of the laws of the United States, including all the public acts and resolutions of Congress and proclamations of the president thereunder. * * * Administrative rules adopted by boards, departments, and commissions pursuant to federal statutes are also matters of judicial knowledge. When such regulations are published in the Federal Register a federal statute provides that their contents shall be judicially noticed. * * * We take judicial notice of the rules and regulations of the Interstate Commerce Commission, in the instant case specifically of I.C.C. Reg. part 195, pertaining to the "Driver's Daily Log", and information thereby to be imparted and its meaning. It is noted under

sec. 195.1 and succeeding sections that a driver is "on duty" from the time he begins to work until the time he is relieved from work and all responsibility for performing work,—that "driving time" includes all time spent on a moving vehicle and also other time not material here,—and that a driver's daily log shall be made on form BMC–59 the form used in the instant situation).

We are of the opinion, in view of what is to be noticed from the foregoing paragraph, that the notation of the defendant's servant that he was "driving", presumably on duty, between Springtown and the point of the collision, does not import that he was acting within the scope and course of his employment. Thus, the only statement on the form which gives us concern is that reflecting that Fort Worth, Texas, was his "Destination or turn around point or place". When we remember that it was the morning following the collision before the form was prepared and the space was filled in, considering also the events and occurrences of the period after the departure from Wichita Falls, we are convinced that the servant's entry, "Ft. Worth", rather than "Springtown" should be accorded no weight.

 When we consider the whole record in light of the inference which could be drawn as to the agency on the part of the defendant's servant,—giving due regard to the absence of certain witnesses within the defendant's control who were in possession of evidence which defendant might have introduced (albeit in corroboration of other testimony which was introduced), and also considering the presumption from the fact of the servant's having been employed to drive the defendant's truck,—we reach the conclusion that the evidence is of such character that only one reasonable deduction could be drawn therefrom. That deduction, in our opinion, is positive. The defendant's servant had departed from the scope and course of his employment and at the time of the collision such condition still obtained.

The motion for rehearing is overruled.

BOYD, Justice (dissenting).

I have reached the conclusion that there was support in the evidence for the jury's finding that the truck driver was in the scope of his employment when the collision occurred.

It was his duty to drive the truck back to Wichita Falls after the poles were unloaded. He had no specific instructions as to what road to travel to or from Springtown, but his general instruction for all trips was to take the "closest, best route." He therefore had discretion in the matter. The road from Jacksboro to Wichita Falls was "torn up."

The driver was permitted to take time out for meals. It was mealtime. He intended to eat his evening meal at Azle. It was not shown that a meal could have been had at Springtown. But if it could have been, he was not required to eat at the most convenient place. He preferred to eat at Azle. He thought it was very little farther from Azle to Wichita Falls by way of Fort Worth than by way of Jacksboro. He knew the road by way of Fort Worth was in good condition. I do not think that his going a few miles out of the most direct way— which way was "torn up"—constituted as a matter of law a complete turning away from his employer's business, as was the case in Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, but at most raised an issue as to whether such conduct was a mere deviation, or a mingling of his own purpose with his employer's work.

Furthermore, the driver's daily log showed that the starting point for that day's drive was Wichita Falls and his destination was Fort Worth, and that at the time of the collision he was "on duty." This report went into the record for all it was worth. Rex Oil Corporation v. Crank, 183 Ark. 819, 38 S.W.2d 1093.

The court holds that the evidence at certain stages of the case would support infer-

ences that the driver was in the scope of his employment when the collision occurred. If so, I think the jurors were entitled to draw the inferences. Bass v. Western Union Telegraph Co., 105 S.C. 487, 90 S.E. 155; 3 C.J.S. Agency § 330, p. 322.