**CITY OF BUNKER HILL VILLAGE, Appellant,**

v.

**MEMORIAL VILLAGES WATER AUTHORITY, Appellee.**

**No. A14–90–00187–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 2, 1991.

Louise B. Trenchard, III, Houston, for appellant.

Thomas C. Godbold, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a summary judgment in favor of the appellee, Memorial Villages Water Authority (the Authority). Appellant brings two points of error alleging: (1) the trial court erred in granting the Authority's Motion for Summary Judgment; and (2) the trial court erred in denying the appellant's Motion for Summary Judgment. We reverse and remand.

The Authority is a water authority which owns and operates a wastewater treatment plant and collection system. The system serves a number of cities in the Memorial Villages area of Harris County. Appellant is one of the cities served by the Authority's wastewater treatment plant. On March 9, 1960, the Authority, through its predecessor the Memorial Villages Water Supply Corporation, (the Corporation), began providing wastewater treatment service to appellant pursuant to an agreement between the Corporation and appellant dated March 9, 1960. The Authority subsequently succeeded to all of the rights and obligations under the 1960 agreement.

On July 1, 1985, appellant and the Authority entered into a Waste Disposal Agreement. This agreement purported to supersede the 1960 agreement providing in pertinent part:

> Whereas, the Authority and the City desire to enter into this Agreement in order to supersede the Prior Agreement and to provide an equitable method of compensating the Authority for treating and disposing of the City's wastewater;

The 1985 agreement further states:

> *Section 10.* Except to the extent referred to in this Agreement, the terms of the Prior Agreement shall cease to be in effect and shall not control the rights and obligation of the Authority and the City with respect to the Plant. The terms and provisions of this Agreement, except as otherwise provided in this section, contain the entire agreement between the parties and shall supersede all previous communications, representa-

tions, and agreements, either verbal or written, with respect to such matters.

However, the 1985 agreement also provides:

> *Section 1.* The Authority shall construct, and operate in a prudent and efficient manner, a new wastewater treatment plant **(the "Plant")** ... (emphasis supplied).

Throughout the agreement, the words "the Plant" appear more than forty times. The 1985 agreement makes no distinction between the existing plant and the new plant proposed in the 1985 agreement.

Subsequent to the 1985 agreement the Authority and the Texas Water Commission (TWC) entered into an Agreed Order as a result of the Authority's violations of the Texas Water Code and of the Authority's violations of its TWC permit. The Agreed Order required the Authority to pay administrative penalties (fines). The Authority also installed a "package plant" to boost treatment capacity until the new plant was completed in order to comply with TWC requirements. Construction on the new plant was not begun until 1986. The new plant was not completed until May, 1988. The Authority's contention in its motion for summary judgment was that appellant owed its pro rata share of the fines incurred and for costs of the package plant. Appellant contends that under either the 1960 agreement or the 1985 agreement it is not liable for such costs.

■ Both parties agree that the 1960 and the 1985 agreements are *unambiguous*. While each document may appear unambiguous on its face, the two documents coupled with the surrounding circumstances contradict such an agreement. This court is not bound by such agreement and must determine the intent of the parties as shown by the written instruments. *See Coker v. Coker,* 650 S.W.2d 391 (Tex.1983).

■ In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *City of*

*Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). Courts should examine and consider the entire writing to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (Tex.1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962).

If a written instrument is so worded that it can be given a certain or definite legal interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157. However, a contract is ambiguous when its meaning is uncertain or it is reasonably susceptible to more than one interpretation. *Skelly Oil Co. v. Archer*, 163 Tex. 336, 356 S.W.2d 774, 778 (Tex.1962). Whether a contract is ambiguous is a question of law for the court to decide by looking at the whole contract in light of the surrounding circumstances at the time when the contract was entered. *R & P Enterprises*, 596 S.W.2d at 518. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the contract becomes a fact issue to be resolved by the trier of fact. *See Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1980).

The first issue to be resolved in this case is which agreement is to govern the dispute. To determine this question it is necessary to look to the 1985 agreement and its integration clauses. As stated above, the clauses in the 1985 agreement purport to supersede the 1960 agreement. However, the first clause in the body of the 1985 agreement states that the terms "the Plant" refer to a "new wastewater treatment plant." Even the integration clause in Section 10 of the 1985 agreement says "the Plant", making no distinction between the existing plant and the new plant referred to in the 1985 agreement. But, the new wastewater plant was not even begun when the 1985 agreement was signed; fur-

ther, it was not completed until almost three years after the 1985 agreement was signed. Thus, Section 1 of the 1985 agreement defines "the Plant" as the new wastewater plant, and the agreement itself uses the terms "the Plant" over and over without any reference to the existing wastewater plant; yet the integration clauses indicate that the 1985 agreement supersedes the 1960 agreement.

According to the rules of construction Section 1 must be considered along with the integration clauses and the underlying circumstances to ascertain the true intention of the parties. *See City of Pinehurst*, 432 S.W.2d at 518, 519. The question then becomes what agreement was to cover the interim between the 1985 agreement and the completion of the new plant. Did the parties intend that the 1960 agreement continue to apply to the existing facility as Section 1 of the 1985 agreement suggests by defining "the Plant" as the new wastewater treatment plant without any reference to the existing plant? Or did the parties intend that the 1985 agreement govern from the time it was signed, completely superseding the 1960 agreement as the integration clauses in the 1985 agreement suggest? And if the latter is true, why was no reference made to the existing plant in the 1985 agreement? And why would parties draw up an agreement that pertained only to a plant that was not even under construction at the time of the agreement? This conflict creates an ambiguity as to the intent of the parties as expressed in the written agreement.

Therefore, this agreement is ambiguous and the trial court erred in granting summary judgment. The trier of fact must resolve the ambiguity by determining the true intent of the parties. *Coker v. Coker*, 650 S.W.2d 391, 395 (Tex.1983); *Trinity Universal Ins. Co. v. Ponsford Bros.*, 423 S.W.2d 571, 575 (Tex.1968).

We reverse the summary judgment rendered in favor of the Authority and remand the cause to the trial court.