TENNECO OIL COMPANY and Tenneco Natural Gas Liquids Corporation, Appellants,

v.

GULSBY ENGINEERING, INC., and Jerry G. Gulsby and Clara J. Gulsby, Individually, and d/b/a Gulsby Enterprises, Appellees.

No. C14–92–00252–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1993.

Rehearing Denied Feb. 25, 1993.

Elton Dry, Houston, for appellants.

Tom Alexander, Linda Marshall, Houston, for appellees.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

The trial court granted summary judgment on all liability issues in favor of Tenneco Oil Company and Tenneco Natural Gas Liquids ("Tenneco") and submitted for jury determination Tenneco's claim for attorney's fees. In response to an issue asking how much money, if any, would compensate Tenneco for reasonable and necessary attorney's fees, the jury found $ 0.00. Both parties have appealed the judgment.

Gulsby Engineering, Inc., Jerry G. Gulsby and Clara J. Gulsby, Individually, and d/b/a Gulsby Enterprises ("Gulsby") appeal from the grant of summary judgment on all liability issues. Tenneco appeals from the judgment denying recovery of attorney's fees. Because we find the trial court erred in holding Mr. and Mrs. Gulsby individually liable, we modify the judgment to reflect that Tenneco recover damages solely from Gulsby Engineering, Inc. Except as so modified, we affirm the remainder of the judgment.

In 1981, Tenneco sought bids for the construction of a natural gas processing plant in Sabine Pass. *Ortloff Corp. v. Gulsby Eng'g, Inc.*, 706 F.Supp. 1295, 1300 (S.D.Tex.1988), *aff'd*, 884 F.2d 1399 (5th Cir.1989) (per curiam) (published by table). Among those submitting bids were Gulsby and the Ortloff Corporation. 706 F.Supp. at 1300. Ortloff's design employed a recently patented gas separation process that utilized a split vapor method for recovering natural gas. *Id.* at 1297. Under Gulsby's proposed design, there would be four residue gas compressors and product treating equipment to remove carbon dioxide. *Id.* at 1300. Recovery under this system was calculated at 82.9 percent. *Id.* Under Ortloff's patented system, only three residue gas compressors were needed and there was no need for product treating equipment. *Id.* Ortloff guaranteed ethane recovery of 87.5 percent and calculated 91.9 percent. *Id.*

After reviewing the bids, Tenneco asked Gulsby to revise its design. *Id.* Gulsby subsequently submitted a bid embodying Ortloff's patented system. *Id.* at 1301. Gulsby was awarded the contract and constructed the plant. *See id.* at 1303. The construction contract contained two indemnity provisions and a provision allowing Tenneco to withhold payment if there was evidence of or the filing of causes of action for which Tenneco could become liable. Upon completion of the plant, Tenneco withheld payment until Gulsby provided a Letter of Credit in the amount of $325,000.00 as security for the performance of the indemnity obligations.

Claiming patent infringement, unfair competition, and misappropriation of confidential information, Ortloff filed suit in federal court against Tenneco and Gulsby. *Id.* at 1296. Upon the filing of that suit, Tenneco sought and received Gulsby's agreement to substitute collateral for the Letter of Credit securing the indemnity obligations under the contract. The collateral was a corrected deed of trust to four tracts of land owned by Gulsby. Mr. and Mrs. Gulsby signed this deed individually and d/b/a Gulsby Enterprises. Mr. and Mrs. Gulsby also signed this deed as guarantors.

In the Ortloff suit, the district court found that Tenneco had passed to Gulsby details of Ortloff's proposed design and that Tenneco was liable for improper use of Ortloff's confidential information. *Id.* at 1308. The district court also found Gulsby liable for unfair competition by misappropriation of Ortloff's bid information. *Id.* The district court found that both Tenneco and Gulsby had infringed Ortloff's patent in the construction and operation of the Sabine Pass Plant. *Id.* Although the district court found that Tenneco willfully provided Gulsby with confidential information, the court noted that Gulsby took steps to avoid infringement of Ortloff's patent and Tenneco sought legal advice before beginning plant operations. *Id.* at 1305, 1309. Thus, the district court found that the infringement was not willful. *Id.* at 1305. Regarding damages, the court found both Tenneco and Gulsby liable in the amount of $835,000.00, the amount of Gulsby's profits. *Id.* at 1309.

On appeal, the Fifth circuit affirmed the trial court's finding that Tenneco and Gulsby infringed Ortloff's patent in the construction and operation of the plant, that Tenneco improperly used Ortloff's confidential information, and that Gulsby engaged in unfair competition by misappropriation. 884 F.2d at 1399.

Following affirmance of the judgment by the Fifth Circuit, Tenneco paid the damage award to Ortloff and then filed this suit seeking indemnity from Gulsby pursuant to the indemnity provisions in the construc-

tion contract. Tenneco filed a motion for summary judgment on all causes of action and the trial court granted this motion. Having granted the partial interlocutory summary judgment on all liability issues, the trial court submitted the issues of attorney's fees to the jury. The two special issues submitted to the jury asked what sum of money, if any, would compensate Tenneco for reasonable and necessary attorney's fees in their defense of the Ortloff litigation and in their prosecution of this case. The jury answered $ 0.00 to both issues.

## I. THE SUMMARY JUDGMENT AS TO LIABILITY

 Gulsby raises ten points of error challenging the trial court's grant of summary judgment in favor of Tenneco. On appeal from a summary judgment, the question is whether the movant met its burden of proving that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a disputed fact issue precluding summary judgment, we must accept as true the evidence favorable to the non-movant, indulging all reasonable inferences and resolving any doubts in the non-movant's favor. *Id.* at 548–49.

In point of error one, Gulsby contends the trial court erred in granting the motion because the evidence raised fact questions as to Gulsby's liability for Tenneco's independent intentional tort. Tenneco claimed Gulsby was required to indemnify Tenneco for its intentional tort pursuant to §§ 7.1 and 17.1 of the construction contract. Gulsby first contends that Tenneco's act of misusing Ortloff's confidential information constitutes an intentional tort. Because the district court found that Tenneco alone was liable for the improper use of Ortloff's confidential information, Gulsby claims that this intentional act is unprotected by the indemnity provisions of the contract.

 Even if we were to hold that the district court's conclusion regarding Tenneco's liability for this act established an independent, intentional tort on Tenneco's part, we would nevertheless find no error by the trial court in granting summary judgment. The single damage award is supported, not only by the findings of liability for misappropriation and improper use of confidential information, but also by the findings of liability for patent infringement. Thus, we overrule point of error one.

In point of error nine, Gulsby claims the trial court erred in granting summary judgment because the evidence raised fact questions whether the contract, as construed by the court, was illegal in that it would require Gulsby to indemnify Tenneco for illegal or tortious acts of Tenneco itself. Tenneco claims that Gulsby did not plead illegality; however, the record indicates that Gulsby did raise this defense in its supplemental answer filed on April 15, 1991.

Gulsby contends that the contract is illegal in that it allows Tenneco to obtain indemnity for its own tortious acts. The case law cited in support of this statement holds that Texas law does not allow indemnification for intentional torts. In ruling on Gulsby's first point of error, however, we found that the summary judgment could be upheld on the basis of the parties' joint and several liability for patent infringement. Thus, we need not determine whether Tenneco would be entitled to indemnity for its acts of unfair competition. We overrule point of error nine.

 In point of error two, Gulsby claims the trial court erred in granting Tenneco's motion for summary judgment because the evidence raised fact questions regarding the construction of the contractual indemnity clause to cover intentional torts committed before entry into the contract. In point of error three, Gulsby contends the evidence raised fact issues whether the acts for which Tenneco was found liable, and for which Tenneco sought indemnity, were acts incident to the construction contract. Under both points, Gulsby contends there is a fact question whether the patent infringement was a precontractual act unprotected by the indemnity clause.

Section 7.1 of the contract provided that Gulsby was to indemnify Tenneco for any claims "occurring or in any manner incident to, connected with or arising out of the work to be performed by Contractor" under the contract. The description of work to be performed under the contract included design, engineering, materials procurement, skid fabrication, field installation, and start-up assistance. Even if Tenneco's act of passing confidential information to Gulsby constituted a precontractual act not encompassed by the broad language of the indemnity clause, the parties' use of that confidential information in designing, constructing, and operating the plant brings these acts within the indemnity provision. Thus, we overrule points of error two and three.

■ In point of error four, Gulsby contends the trial court erred in granting summary judgment because the evidence raised fact issues as to what portion, if any, of the federal judgment was properly reimbursable by Gulsby. Under this point, Gulsby reiterates its argument that it should not have to indemnify Tenneco for its precontractual patent infringement.

The district court found, however, that both Tenneco and Gulsby infringed Ortloff's patent in plant construction and operation, which were contractual, not pre-contractual, acts. See Ortloff, 706 F.Supp. at 1308. The court then awarded Ortloff compensatory damages which are statutorily authorized in patent infringement cases. Id. Because the evidence estimating Ortloff's projected profits was insufficient, the district court considered evidence of Gulsby's profits to estimate Ortloff's lost profits. Id. Thus, the damages awarded were the lost profits resulting from the patent infringement by Gulsby and Tenneco. Although the district court also found Ortloff entitled to relief for the acts of unfair competition by Gulsby and Tenneco, the court did not award any additional damages for these acts. Id. at 1309. The Fifth Circuit affirmed this refusal to award additional damages, finding that the evidence did not establish Ortloff's entitlement to more than lost profits. Ortloff Corp., 884

F.2d at 1399. In other words, either the patent infringement finding, the unfair competition finding, or both could have supported the damages awarded. We need not determine whether Tenneco's act of passing Ortloff's confidential information to Gulsby was a precontractual act unprotected by the indemnity clause because we may uphold the court's ruling on the ground that Tenneco was entitled to indemnity for the loss resulting from the joint and several liability for patent infringement. We overrule point of error four.

In point of error five, Gulsby claims the trial court erred in granting summary judgment because the evidence raised fact questions as to the individual liability of Mr. and Mrs. Gulsby, who were not parties to the contract. The trial court granted Tenneco's motion for summary judgment and ruled that Mr. and Mrs. Gulsby, individually and d/b/a Gulsby Enterprises, were secondarily liable to reimburse Tenneco for the entire sum of the money judgment satisfied by Tenneco's payment to Ortloff of $1,613,804.71.

The Gulsbys first contend they executed a corrected deed of trust to four tracts of land while they were under duress caused by Tenneco's refusal to pay the last scheduled payment. This contention duplicates the claim in point of error eight, that the trial court erred in granting summary judgment because the evidence raised fact issues whether the deed of trust was obtained by duress and not voluntarily. Gulsby contends that Tenneco's withholding of final payment under the contract until the Gulsby's executed the deed of trust constituted duress and that the execution of this deed was not voluntary.

■ Duress is a threat to do some act which the threatening party has no legal right to do. Creative Mfg., Inc. v. Unik, Inc., 726 S.W.2d 207, 211 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.). Tenneco, however, had a legal right under the contract to withhold payment and demand security for the indemnity obligation.

Section 24.4 of the contract states:
Payment due by Company to Contractor may be withheld by Company without

payment of interest because of ... evidence of or the filing of claims, liens, demands and causes of action for which, if established, Company may become liable.... If and when the cause or causes for withholding any such payment shall be remedied or removed and satisfactory evidence of such remedy or removal has been presented to Company, the payments due and withheld shall be promptly made to Contractor.

Section 7.2 of the contract authorizes Tenneco, at its sole option, to require Gulsby to furnish a bond conditioned to indemnify Tenneco from any claims. Thus, we agree that Tenneco was contractually authorized to withhold payment until Gulsby provided security for the indemnity obligation. Gulsby agreed to these provisions by executing the contract. Because no fact issue existed as to the defense of duress or lack of voluntariness, we overrule point of error eight.

The Gulsbys' second argument under point of error five is that they did not enter any guaranty agreement in their individual capacities. The corrected deed of trust states that it is given to secure certain indemnity obligations of the grantors and Gulsby Engineering, Inc. Under this deed of trust, Mr. and Mrs. Gulsby conveyed four tracts of land in trust to "secure payment and faithful performance of all those agreements in one certain Letter Agreement dated November 27, 1985 ... attached as Exhibit 'A' hereto." This November 27, 1985 letter sets forth the parties' agreement that Gulsby will substitute collateral, in the form of a deed of trust to four tracts of land, for a previously furnished Letter of Credit. The letter also states that Gulsby represents that it "will also promptly make a best efforts attempt to secure an irrevocable standby Letter of Credit in the amount of $200,000.00...."

Mr. and Mrs. Gulsby each signed this deed of trust on signature lines bearing their names "Individually and d.b.a. Gulsby Enterprises" and on signature lines bearing their names as "Guarantor for Gulsby Engineering, Inc." There is no question the Gulsbys executed the corrected deed of

trust in their individual capacities. The issue, however, is whether the corrected deed of trust, together with the Letter Agreement, also constitute a guaranty agreement for which the Gulsbys are individually liable.

Tenneco contends that these documents, coupled with the Gulsbys signatures on the deed as guarantors for Gulsby Engineering, Inc. constitute a guaranty of the Gulsby's obligation to indemnify Tenneco for the entire money judgment it paid to Ortloff. A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform. *See Dann v. Team Bank*, 788 S.W.2d 182, 183 (Tex.App.—Dallas 1990, no writ). A guaranty agreement is to be strictly construed and shall not be extended beyond its precise terms by construction or implication. *University Sav. Ass'n v. Miller*, 786 S.W.2d 461, 462 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Neither the corrected deed of trust nor the incorporated letter agreement contain any language indicating a promise to undertake responsibility beyond the conveyance of the four tracts of land. The corrected deed of trust does state that the conveyance is made to secure any indebtedness or obligation, but the deed does not state that the Gulsbys agree to guarantee any debt or obligation beyond the agreement to convey the four tracts. Aside from the conveyance of property, the deed does not describe the obligation allegedly guaranteed nor does it contain any terms indicating a promise to pay an alleged obligation. *See Dunn v. Growers Seed Ass'n*, 620 S.W.2d 233, 238 (Tex.App.—Amarillo 1981, no writ). Absent any guaranty language in the body of the deed, we refuse to find that adding a signature line with the word "guarantor" can transform a deed of trust into a guaranty of obligations additional to the conveyance of property described in the deed. Thus, the trial court erred in holding Mr. and Mrs. Gulsby individually liable for the sum of $1,613,804.71. We sustain point of error five.

In point of error six, Gulsby claims the trial court erred in granting summary judgment because the two indemnity clauses cannot both be applicable or, if they are, they are contradictory. Essentially, Gulsby argues that these provisions are ambiguous and that this ambiguity should be resolved against the drafter, Tenneco.

■■■ If a written instrument is so worded that it can be given a definite legal interpretation, it is not ambiguous, and a court will construe the document as a matter of law. *City of Bunker Hill Village v. Memorial Villages Water Authority*, 809 S.W.2d 309, 311 (Tex.App.—Houston [14th Dist.] 1991, no writ). A contract is ambiguous when its meaning is uncertain or it is reasonably susceptible to more than one interpretation. *Id.* In construing a contract, a court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument and to achieve that objective; the court should examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none is rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

■■■ Section 7.1 contains broad indemnity language requiring Gulsby to indemnify Tenneco for any and all claims arising out of the work performed under the contract, except to the extent any such damages were caused by Tenneco's sole negligence. Section 17.1 specifically addresses indemnity for patent infringement claims. Under this section, Gulsby was to defend all patent infringement suits and indemnify Tenneco for any resulting loss unless Tenneco specified in writing the particular product or process. Even if Tenneco specified in writing a particular process or product, Gulsby would be responsible for any resulting loss unless Gulsby notified Tenneco in writing that the process or article specified could constitute patent infringement.

We do not find the contract ambiguous. Instead, we find the contract susceptible to only one reasonable meaning, that Gulsby was to indemnify Tenneco for all claims arising out of the contract that were not the result of Tenneco's sole negligence and,

subject to certain specified conditions, for all patent infringement claims. We find no error by the trial court. We overrule point of error six.

■■■ In point of error seven, Gulsby claims the trial court erred in granting summary judgment because the evidence raised fact questions whether the information passed by Tenneco to Gulsby was specified in writing, thereby absolving Gulsby of indemnification liability. Gulsby contends that the only summary judgment proof before the court regarding the confidential information was Mr. Gulsby's affidavit stating that Tenneco orally transmitted the confidential Ortloff information and that Tenneco requested that Gulsby write down this information and include it in Gulsby's bid.

■■■ Section 17.1 of the contract requires Gulsby to defend Tenneco and to indemnify Tenneco for any loss resulting from a claim of patent infringement unless Tenneco specified the particular product or process *in writing*. Gulsby argues that its written notations from the oral conversation with Tenneco satisfies this "specified in writing" requirement of § 17.1. In support of this contention, Gulsby cites *Mosqueda v. Albright Transfer & Storage Co.*, 320 S.W.2d 867 (Tex.Civ.App.—Fort Worth 1958, no writ). We find *Mosqueda* factually inapplicable. Furthermore, we find no holding in that case supporting Gulsby's contention that its notes taken during a conversation with Tenneco could constitute a writing by Tenneco. We find no error in the trial court's determination that the information passed to Gulsby was not specified in writing. We overrule point of error seven.

In point of error ten, Gulsby claims the trial court erred in granting summary judgment because the evidence raised fact issues whether Tenneco's assumption of control of the federal trial bars it by waiver and estoppel from any recovery. Gulsby cites no case authority for the proposition that, where an indemnitor owes a duty to defend, the indemnitee waives the right to indemnity or is estopped to assert indemni-

ty rights if it assumes control of the defense.

Section 17.1 requires Gulsby not only to defend all patent infringement suits, but also to save Tenneco harmless from any losses on account of suits or claims of patent infringement. Where a party agrees to hold another party harmless from all suits relating to work performed under the contract, courts have construed this general indemnity language to include indemnification for costs and expenses incurred in defense of the claim. *See Continental Steel Co. v. H.A. Lott, Inc.*, 772 S.W.2d 513, 517 (Tex.App.—Dallas 1989, writ denied). Because the section in question required Gulsby to hold Tenneco harmless for any loss incurred in connection with suits for patent infringement, Gulsby also had to indemnify Tenneco for all costs and expenses incurred in defense of suit. Absent any authority that Tenneco waived its right to indemnity by hiring trial counsel and assuming control of the defense, we find no error by the trial court. We overrule point of error ten.

## II. ATTORNEY'S FEES

Having independently perfected its appeal, Tenneco raises four points of error challenging the award of $0.00 for attorney's fees. In points of error one and two, Tenneco claims the trial court erred in denying Tenneco's motion for judgment notwithstanding the verdict because the evidence compelled granting the motion as a matter of law.

 For a court to award an amount of attorney's fees as a matter of law, the evidence from an interested witness must be uncontradicted by any other witness or attendant circumstances and it must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cause suspicion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990). For a trial court to disregard jury findings and to grant a motion for judgment notwithstanding the verdict, the court must determine that there is no evidence upon which the jury could have made the findings relied

upon. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987). Tenneco claims the evidence conclusively established that the attorneys fees it incurred and paid were $147,277.77 in the instant suit and $427,186.82 in the Ortloff suit.

 The evidence presented by Tenneco in this case, however, was contradicted. Tenneco presented four witnesses: Roy Del Bello, Administrative Manager for Tenneco; Robert Pool and Alfred Smith, attorneys for Tenneco; and Elton Dry, a patent attorney who has represented Tenneco as outside counsel since 1979. These witnesses testified to the amount of fees incurred by Tenneco. Pool and Smith testified to reviewing the invoices and approving the fees billed in this case and in the Ortloff suit. These witnesses testified that the fees requested were reasonable and necessary. During cross-examination, Smith admitted that there would have been no infringement if, at the time Tenneco received the letter from Ortloff, they had stopped construction of the plant or paid Ortloff a licensing fee for the patent. Smith further admitted that Tenneco felt Ortloff wanted too much for a licensing fee ($270,000.00) and that Tenneco decided to challenge Ortloff's claim. Tenneco's final witness, Elton Dry, testified that he supervised the work performed by the attorneys Gulsby hired and those Tenneco hired.

Gulsby presented two witnesses: Byron Jamison, the attorney Gulsby hired before trial; and Mr. Gulsby. Jamison testified that he joined the case after Fulbright and Jaworski withdrew. Gulsby had fallen behind in its payments to Fulbright and Jaworski and was advised to retain Jamison, whose fees were not as high. Jamison noted that all discovery had been completed when he joined the case and that he had prepared the case for trial. Jamison knew that Elton Dry supervised the legal work on this case, but Jamison did not believe this was necessary or that it contributed significantly to the case. Jamison explained that, although he was ready to try the case, Tenneco called a meeting one month before trial to advise everyone that Tenneco had hired Guy McClung to take

over as lead trial attorney in the case. Jamison testified that McClung was a less experienced attorney, but that Tenneco had already made the decision to change attorneys and so Jamison accepted this decision. Jamison added that, during trial, McClung did not focus on what Jamison thought were the strongest defenses to Ortloff's claims. Jamison testified that he did not agree to let McClung take the lead; rather, he chose not to contest the decision Tenneco had already made. Jamison understood that Tenneco would pay McClung directly and that Gulsby did not want McClung on the case. Jamison billed Gulsby approximately $150,000.00 for his work on the case.

Mr. Gulsby testified that he believed it was Tenneco's decision not to take Ortloff's offer of a $270,000.00 licensing fee. Mr. Gulsby understood that Tenneco would be responsible for paying McClung's fees and that this would relieve Gulsby of a duty to defend. Gulsby also realized that Tenneco disagreed with this position. Gulsby testified that he has paid around $300,000.00 in attorney's fees.

We find that the testimony by Jamison and Gulsby tends to contradict the testimony by Tenneco's witnesses that the fees sought by Tenneco were reasonable and necessary. Thus, we do not find that Tenneco established their entitlement to attorney's fees as a matter of law. We overrule points of error one and two.

■ In point of error three, Tenneco claims the court erred in denying Tenneco's motion for new trial because the verdict was against the great weight and preponderance of the evidence. In reviewing such a challenge, an appellate court must examine the record to determine if there is some evidence to support the finding or if the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Based on the evidence discussed under points of error one and two, we find some evidence *indicating that the fees* incurred and paid by Tenneco were not reasonable and necessary. Thus, some evidence supports the jury's finding. We overrule point of error three.

■ In point of error four, Tenneco claims the court erred in including the phrase "if any" in the jury questions because an award of zero attorney's fees is improper as a matter of law. In support of this contention, Tenneco cites *Elizabeth–Perkins, Inc. v. Morgan Express, Inc.*, 554 S.W.2d 216 (Tex.Civ.App.—Dallas 1977, no writ). We disagree with Tenneco's interpretation of this case.

In *Elizabeth–Perkins*, the plaintiff's attorney testified regarding reasonable fees for his services at trial and on appeal. *Id.* at 218. On cross-examination, this attorney admitted that his failure to have a court reporter present had resulted in reversal of a default judgment and that this reversal led to further proceedings after remand. *Id.* The jury was asked the reasonable value of this attorney's services in light of the circumstances and they answered, "none." *Id.* at 219. The appellate court held that, although the jury was not required to accept absolutely the attorney's testimony, it was not free to reject it totally. *Id.* The court noted that the jury was not asked whether attorney's fees should be awarded. *Id.* Finally, the court asserted that allowing the jury's nonresponsive answer of "none" to determine whether attorney's fees are recoverable would be in contravention of the statutory provision for recovery of fees in such cases. *Id.* Holding that the jury's finding was against the great weight and preponderance of the evidence, the court reversed and rendered judgment for the plaintiff in the amount of $50.00, constituting fees for the attorney's services in connection with obtaining the default judgment. *Id.* at 219. The court did not award fees for the attorney's services following the reversal of the default judgment. *Id.*

We do not interpret this case to hold that, in those cases where attorney's fees may be recovered, a jury may never answer "none." Rather, the evidence in this case showed that the attorney's fees, for at least part of the work performed, were reasonable and necessary. *See id.* at 218.

Furthermore, there was no evidence contradicting the attorney's testimony. In our case, however, Gulsby presented evidence contradicting Tenneco's evidence regarding the reasonableness and necessity of the services performed and the attorney's fees incurred. Thus, we find no merit in Tenneco's contention that the phrase, "if any," in the jury question was improper. We overrule point of error four.

Having found error by the trial court in holding Mr. and Mrs. Gulsby individually liable, we modify the trial court's judgment to award Tenneco actual damages solely from Gulsby Engineering, Inc. in the sum of $1,613,804.71. Except as so modified, we affirm the remainder of the judgment.

JUNELL, J., not participating.