Reversed in Part and Rendered, and Majority and Concurring Opinions
filed March 6, 2003









 

Reversed in Part and Rendered, and Majority and
Concurring Opinions filed March 6, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01068-CV

____________

 

MATERIAL PARTNERSHIPS, INC.,
Appellant

 

V.

 

JORGE LOPEZ VENTURA,
Appellee

 



 

On
Appeal from the 55th District Court

Harris County, Texas

Trial
Court Cause No. 99-35432

 



 

M
A J O R I T Y   O P I N I O N








Appellant
Material Partnerships, Inc. (AMPI@) originally sued Sacos Tubulares del Centro, S.A. de C.V. (ASacos@),
a Mexican corporation, claiming Sacos owed MPI over $900,000 for materials MPI
delivered to Sacos on an open account. 
MPI subsequently amended its petition to allege that appellee, Jorge
Lopez Ventura (ALopez@) was individually liable for the corporate debt under the
terms of a personal guaranty.[1]  Following a bench trial, the district court
rendered a default judgment in the amount of $962,139.79, plus interest and
attorney=s
fees, in favor of MPI on its claim against Sacos, and a take-nothing judgment
in favor of Lopez on MPI=s claim against him.[2]  In four issues, MPI challenges the trial
court=s
sole finding of fact and three conclusions of law.  Concluding the guaranty on which MPI relies
is unambiguous and enforceable, we reverse that portion of the judgment denying
recovery to MPI in its suit against Lopez and render judgment for MPI and against
Lopez, as guarantor, in the amount of $962,139.79, plus pre-judgment and
post-judgment interest.  The remainder of
the judgment is unaffected by this decision.

Factual and Procedural Background

Lopez
is an international businessman who speaks English as a second language, having
first studied it in third or fourth grade. 
Lopez also speaks German and French. 
He has been personally involved in business transactions in the United
States since 1984 and has made more than 200 trips to the United States.  From 1988 or 1989, Lopez was an owner and the
general manager of Sacos, a bag manufacturing company.

Beginning
in 1997, Sacos purchased products from MPI. 
Sacos was slow in making payments to MPI almost from the beginning of
the relationship, and did not pay invoices from March through November 1998.








In
August 1998, MPI owner Joel Burgower and Ken Gross, owner of MPI=s
supplier, met with Lopez in Mexico to discuss several matters, including Sacos=s
payment of the invoices.  During the
meeting, Lopez told Gross that Sacos had the ability to pay its debts to MPI,
and Gross asked Lopez whether he would give a personal guaranty for the
outstanding debts.  Lopez testified he
told Gross he (Lopez) could not give his personal guaranty.  Gross, however, testified Lopez said he was
willing to provide the personal guaranty and had the assets to back it up.  Burgower and Gross testified there was no
discussion about Lopez providing a corporate guaranty.

On
September 18, 1998, Burgower wrote Lopez requesting Awritten
assurances in regards to the outstanding debts and obligations that you have
with us.@  Burgower specifically asked Lopez to Aforward
a personal guarantee covering all past and future obligations.@  The letter was addressed to AJorge
Lopez, SACOS TUBULARES DEL CENTRO S.A. DE C.V.@  At the time the letter
was drafted, MPI had stopped shipping product to Sacos.

Lopez
did not recall receiving Burgower=s letter.  Over hearsay
and relevance objections, however, Burgower testified that Claudio Carrera, a
Sacos employee who dealt with the MPI account, acknowledged in a telephone
conversation that both Carrera and Lopez had received the letter.[3]  According to Burgower, Carrera asked what
Burgower wanted in response to the September 18 letter, and Burgower told
Carrera he wanted AMr Lopez to personally guarantee, on a personal basis, all past
and future obligations to MPI.@

In
a letter to Burgower dated September 25, 1998, Lopez wrote, AI
. . . want to certify you [sic] that I, personally, guaranty all outstandings
[sic] and liabilities of Sacos Tubulares with Material Partnerships as well as
future shipments.@  Lopez drafted the letter
himself and signed it over the designation, AJORGE LOPEZ VENTURA, GENERAL MANAGER.@  After receiving the September 25 letter, MPI
resumed shipping product to Sacos, sending additional shipments valued at
approximately $200,000.  MPI subsequently
received one payment of approximately $60,000 from Sacos.  When Sacos did not pay for the additional
shipments, MPI stopped shipping to Sacos.








In
July 1999, MPI sued Sacos.  In November
1999, the Sacos plant closed.  In
February 2000, MPI amended its petition to include a claim against Lopez on the
guaranty.

Before
trial, Sacos withdrew its answer and permitted a default judgment to be
rendered against it.  MPI=s
claim against Lopez was then tried to the bench.  At trial, Lopez testified he drafted the
September 25 letter after a conversation with Burgower over his cellular
phone.  During that phone call, Burgower
requested a written statement that money was owed and was going to be
paid.  A request for a corporate guaranty
made sense to Lopez because, as Lopez explained, under typical business
practice in Mexico, shipping the product is not a complete guaranty of payment
from the vendor=s perspective because many things can occur to make the
obligation to pay invalid.  Lopez is
familiar with the practice of vendors, who routinely seek acknowledgment from a
manager or representative with sufficient corporate authority to accept the
obligation for the company so the vendor has a strong legal position to claim
payment.[4]  Lopez did not believe that Burgower intended
to withhold additional shipments to Sacos, absent a personal guaranty from
Lopez that bound him individually for the corporate debt.  Lopez believed Burgower simply wanted a more
solid commitment from Sacos that all transactions were accepted by the company,
which, as Lopez explained, is common in Mexico when amounts of business are
important.








Lopez
testified he intended to sign, and did sign, the September 25 letter in his
capacity as general manager of Sacos.  He
gave MPI a corporate guaranty.  Lopez
made the promise on the company=s behalf.  He had no
personal debts to MPI.  Lopez further
explained the concept of Aaval,@ as understood in Mexico, means to make a guaranty besides the
obligation of the original debtor.  But
for the aval to qualify as a personal aval, the signator must specify
that he is signing in an individual capacity. 
Lopez gave the September 25 letter to Burgower in Lopez=s
capacity as Ageneral manager@ of Sacos.  Except for
giving an aval to banks, Lopez had never given an Aaval,@ or guaranty, so that his personal assets would be responsible
for paying Sacos=s debt.

After
hearing the evidence, the trial court filed the following finding of fact and
conclusions of law:

Findings[sic] of
Fact

1.  The Court finds that Defendant Jorge Lopez
Ventura did not sign [the September 25, 1998 letter] in an individual or
personal capacity.

 

Conclusions of
Law

1.  The Court concludes that [the September 25,
1998 letter], read as a whole, does not clearly express an intent to bind Jorge
Lopez Ventura in an individual or personal capacity.

2.  The Court concludes that [the September 25,
1998 letter] is ambiguous.

3.  The Court concludes that [the September 25,
1998 letter] lacks terms which are essential to the creation and enforcement of
a personal guaranty, and is not complete in every material detail.

4.  The Court concludes that [the September 25,
1998 letter] is not enforceable as a personal guaranty.

 

The
court then rendered judgment ordering MPI recover $962,139.79, pre- and
post-judgment interest, and attorneys fees in its suit against Sacos.  The court further ordered MPI take nothing by
its suit against Lopez.

Discussion

Introduction
and Standard of Review








MPI
presents the following four issues for review: (1) whether the trial court
erred in concluding Lopez=s September 25 letter is ambiguous and does not express an
intent to bind Lopez in an individual or personal capacity; (2) whether the
trial court erred in finding Lopez did not sign the September 25 letter in an
individual or personal capacity; (3) whether the trial court erred in
concluding Lopez=s September 25 letter lacked terms essential to the creation
and enforcement of a personal guaranty and is not complete in every material
detail; and (4) whether the trial court erred in concluding Lopez=s
September 25 letter is not enforceable as a personal guaranty (interpreted by
MPI as relating to consideration).

We
review the trial court=s conclusions of law de novo.  Smith v. Smith, 22 S.W.3d 140, 143B44
(Tex. App.CHouston [14th Dist.] 2000, no pet.).  The standard of review for conclusions of law
is whether they are correct.  Dickerson
v. DeBarbieris, 964 S.W.2d 680, 683 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).  We will
uphold conclusions of
law on appeal if the judgment can be sustained on any legal theory the evidence
supports. Waggoner v. Morrow, 932 S.W.2d 627, 631 (Tex. App.CHouston [14th Dist.] 1996, no writ).
Thus, incorrect conclusions of law do not require reversal if the controlling
findings of fact support the judgment under a correct legal theory. Id.

We
review the trial court=s findings of fact for legal and factual sufficiency of the
evidence by the same standards we apply in reviewing the evidence supporting a
jury=s
finding. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  When the appellate record contains a reporter=s
record as it does here, findings of fact are not conclusive on appeal if the
contrary is established as a matter of law, or if there is no evidence to
support the findings.  Middleton v.
Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex. App.CHouston
[14th Dist.]), writ ref=d n.r.e., 699
S.W.2d 199 (Tex. 1985) (per curiam).

Issue
one:  Whether Lopez=s
September 25 Letter is Ambiguous








In
issue one, MPI challenges the trial court=s legal conclusion that Lopez=s September 25 letter, in which he stated, AI,
personally, guaranty all outstandings and liabilities of Sacos Tubularies,@
was ambiguous.  A guaranty agreement is a
contract in which one party agrees to be responsible for the performance of
another party even if he does not have direct control.  Gooch v. Am. Sling Co., 902 S.W.2d
181, 185 (Tex. App.CFort Worth 1995, no writ). 
Whether a contract is ambiguous is a question of law.  Fein v. R.P.H., Inc., 68 S.W.3d 260,
265 (Tex. App.CHouston [14th Dist.] 2002, pet. denied) (citing Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996)).  If a contract is subject to two or more
reasonable interpretations, the contract is ambiguous, thereby creating a fact
issue on the parties= intent.  Fein, 68
S.W.3d at 265 (citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996)).  In
contrast, if the written instrument is worded so that it can be given a certain
or definite legal meaning or interpretation, then it is not ambiguous, and the
court will construe the contract as a matter of law.  Fein, 68 S.W.3d at 265 (citing Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).

The
fact the parties provide conflicting interpretations does not create an
ambiguity.  Fein, 68 S.W.3d at 265
(citing Columbia Gas Transmission Corp., 940 S.W.2d at 589).  For an ambiguity to exist, both
interpretations must be reasonable.  Lake
Charles Harbor & Terminal Dist. v. Bd. of Trustees of the Galveston Wharves,
62 S.W.3d 237, 243 (Tex. App.CHouston [14th Dist.] 2001, pet. denied) (citing Nat=l
Union Fire Ins. Co. v. CBI Indus., Inc.,
907 S.W.2d 517, 520 (Tex. 1995)).  Only
after a court first determines a contract is ambiguous may the court consider
the parties= interpretations and admit extraneous evidence to determine the
true meaning of the instrument.  Lake
Charles Harbor, 62 S.W.3d at 243 (citing Nat=l
Union Fire Ins. Co., 907 S.W.2d at
520).  It is improper to use a party=s
testimony to create an ambiguity when a contract is otherwise unambiguous.  Columbia Gas Transmission Corp., 940
S.W.2d at 592 n.2.[5]








In
arguing the September 25 letter is ambiguous, Lopez invokes the rule of strictissimi
juris, which entitles a guarantor to have his agreement strictly construed
and not extended by construction or implication beyond the precise terms of his
contract.  See McKnight v. Va. Mirror
Company, 463 S.W.2d 428, 430 (Tex. 1971). 
This rule, however, applies after the terms of the guaranty have been
ascertained.  See id.

In
the September 25 letter, Lopez wrote, AI . . . want to certify you [sic] that I, personally, guaranty
all outstandings [sic] and liabilities of Sacos Tubulares with Material
Partnerships as well as future shipments.@  Lopez nevertheless
argues the Amere mention@ of Aguaranty@ or Aguarantor@ is not sufficient to create individual liability without other
material terms.  In support, he cites Tenneco
Oil Co. v. Gulsby Engineering, Inc., 846 S.W.2d 599, 605 (Tex. App.CHouston
[14th Dist.] 1993, writ denied), and Gulf & Basco Co. v. Buchanan,
707 S.W.2d 655, 657 (Tex. App.CHouston [1st Dist.] 1986, writ ref=d
n.r.e.).  In each case, the court
emphasized the absence of any guaranty language in the body of the document.

Tenneco involved the conveyance of a deed of trust as collateral to
secure certain indemnity obligations. 
846 S.W.2d at 605.  The defendants
had signed the deed on lines bearing their names AIndividually and d.b.a. Gulsby Enterprises@
and also on signature lines bearing their names as AGuarantor
for Gulsby Engineering, Inc.@  Id. at 605.  This court held, AAbsent
any guaranty language in the body of the deed, we refuse to find that adding a
signature line with the word >guarantor= can transform a deed of trust into a guaranty of obligations
additional to the conveyance of property described in the deed.@  Id. 
Unlike Tenneco, the body of Lopez=s
letter contains unambiguous guaranty language: AI, personally, guaranty.@

In
Gulf & Basco Co. v. Buchanan, the First Court of Appeals also
acknowledged that a signature alone will not create an ambiguity in otherwise
clear guaranty language in the body of an instrument:








[T]here
is no clear mode of signature that will absolutely fix or avoid personal
liability.  A signature followed by
corporate office will result in personal liability where the individual is
clearly designated within the instrument as personal surety for the
principal.  In such case, the corporate
office may be construed a descriptio personae of the signator rather
than indication of the capacity in which he signs.

 

707 S.W.2d
at 657.

Lopez
contends Gulf & Basco Co. v. Buchanan is on point, arguing the fact
he used company letterhead and signed the letter in his capacity as general
manager of Sacos, rather than individually, renders the language in the body of
the letter ambiguous.  The document at
issue in Gulf & Basco contained the following signature lines:

Alan Buchanan Builders, Inc.  [hand written]

NAME
(Printed)                        [pre‑printed]

 

6301
Ranchester, Houston               

HOME
ADDRESS                           

 

Alan B. Buchanan
(hand written)

SIGNATURE                                    

 

Id. at 658.

The
First Court of Appeals concluded, Ain the absence of a clear intent within the instrument to bind
Buchanan in his individual capacity, the manner of execution is susceptible of
two different and reasonable interpretations,@ i.e., as binding either a corporation or an
individual.  Id.  But, as discussed above, when clear language
within the instrument designates the individual as personal surety for the
principal, the corporate office following the signature does not vitiate the
guaranty.  Id. at 657.

Unlike
the document in Gulf & Basco, the letter in the present case does
express a clear intent to bind Lopez Apersonally.@  Accordingly, Lopez=s
signature over his corporate office does not render the document
ambiguous.  Gulf & Basco is
inapposite.








On
the issue of ambiguity, we conclude the document in the present case more
closely resembles that in a recent case from the San Antonio court of
appeals:  Taylor‑Made Hose, Inc.
v. Wilkerson, 21 S.W.3d 484 (Tex. App.CSan Antonio 2000, pet. denied). 
In Taylor-Made Hose, the court considered language at the end of
a single-page credit application by North American Transit, Inc.  See id. at 486. The application had
been signed by Lynne Wilkerson under lines containing her hand printed name and
a hand printed designation of her title of vice president.  See id.  The court concluded:

As
stated in the credit application . . . , Lynne Wilkerson Apersonally
agree[d] to pay all invoices and cost of collection ... on any amount remaining
unpaid after 90 days@ on North
American Transit=s open account
with Taylor‑Made Hose.  This
agreement is not in any respect ambiguous. 
By agreeing to Apersonally . .
. pay@ North American
Transit=s delinquent
account, Wilkerson made herself personally liable for the corporation=s
debt.

 

Id. at 488 (emphasis added).

Lopez
nevertheless argues we should distinguish language found in credit applications
because a credit application Ais by definition@ a guaranty.[6]  Even if this is the case, it does not answer
the question of whether the guaranty language and the signature show clear intent
that the individual be bound.  As in Taylor-Made
Hose, the guaranty language unambiguously indicates Lopez=s
personal guaranty.

Finally,
Lopez directs this court=s attention to Texas Business and Commerce Code section
3.402(b)(1), which provides:








(b)
If a representative signs the name of the representative to an instrument and
the signature is an authorized signature of the represented person, the
following rules apply:

(1)
If the form of the signature shows unambiguously that the signature is made on
behalf of the represented person who is identified in the instrument, the
representative is not liable on the instrument.

 

Tex. Bus. & Com. Code Ann.
'
3.402(b)(1) (Vernon 2002).

Section
3.402(b)(1), however, deals with negotiable instruments.  See Tex.
Bus. & Com. Code Ann. ' 3.102(a) (Vernon 2002) (stating chapter applies to negotiable
instruments).  See also Tex. Bus. & Com. Code Ann. '
3.104(b) (Vernon 2002) (providing, A>Instrument=
means a negotiable instrument@).  A guaranty agreement
is not a negotiable instrument, and is not governed by the provisions of the
Texas UCC.  Vaughn v. DAP Fin. Svcs.,
982 S.W.2d 1, 6 (Tex. App.CHouston [1st Dist.] 1997, no pet.); Dann v. Team Bank,
788 S.W.2d 182, 186 (Tex. App.CDallas 1990, no writ); Cortez v. Nat=l
Bank of Commerce, 578 S.W.2d
476, 478 (Tex. Civ. App.CCorpus Christi 1979, writ ref=d n.r.e.).

Furthermore,
even were we to assume Texas Business and Commerce Code section 3.402(b)(1)
somehow informs our analysis of the letter at issue, the section does not
answer the question of whether Lopez=s signature unambiguously shows he signed on behalf of Sacos,
particularly given the language of personal guaranty in the body of the
letter.  The example of an unambiguous
signature given in the comment, A>P[rincipal]
by A[gent], Treasurer,=@
differs significantly from Lopez=s signature.  See Tex. Bus. & Com. Code Ann. '
3.402(b)(1) cmt. 2 (Vernon 2002).  Here,
we have neither the designation ASacos by Lopez@ nor the designation ALopez for Sacos.@  Cf. Block v.
Aube, 718 S.W.2d 914, 915 (Tex. App.CBeaumont 1986, no writ) (concluding appellant did not
personally guaranty employment contract when he never used any personal
pronouns in employment contract and the signature block contained company name
followed by appellant=s signature and ABy its Owner and President,@ employer).








We
hold Lopez=s September 25 letter is not ambiguous, and therefore sustain
MPI=s
issue one.  Because of our disposition of
issue one, we need not address MPI=s issue two, which challenges the sufficiency of the evidence
to support the trial court=s finding Lopez did not sign the September 25 letter in an
individual or personal capacity.

Issue Three: Whether the September 25
Letter Contained All the Essential Terms Necessary to Creation and Enforcement
of a Personal Guaranty.

 

Texas
Business and Commerce Code section 26.01 provides in relevant part:

(a)
A promise or agreement described in Subsection (b) of this section is not
enforceable unless the promise or agreement, or a memorandum of it, is

(1)
in writing; and

(2)
signed by the person to be charged with the promise or agreement or by someone
lawfully authorized to sign for him.

 

Tex. Bus. & Com. Code Ann.
'
26.01(a) (Vernon 2002).  Subsection (b)
applies to Aa promise by one person to answer for the debt, default, or
miscarriage of another person.@  Id. '
26.01(b)(2).[7]  This provision requires Aa
written memorandum which is complete within itself in every material detail,
and which contains all of the essential elements of the agreement, so that the
contract can be ascertained from the writings without resorting to oral
testimony.@  Cohen v. McCutchin,
565 S.W.2d 230, 232 (Tex. 1978).  The
essential terms of a guaranty agreement are (1) the parties involved, (2) a
manifestation of intent to guaranty the obligation, and (3) a description of
the obligation being guaranteed.  Park
Creek Assocs., Ltd. v. Walker, 754 S.W.2d 426, 429 (Tex. App.CDallas
1988, writ denied).








Lopez=s
September 25 letter set forth the parties involved: Lopez and MPI.  The letter contained a manifestation of
intent to guaranty the obligation: AI, personally, guaranty.@  Finally, the letter
contained a description of the obligation being guaranteed: Aall
outstandings and liabilities of Sacos Tubulares with Material Partnerships as
well as future shipments.@  Although Lopez lists
other potential terms not included in the letter, such as when Lopez is to pay,
whether MPI must make demand on Sacos before making demand on Lopez, whether
Lopez and Sacos are jointly liable, Lopez provides no case law to support a
claim these are essential terms.

Lopez
instead relies on Dunn v. Growers Seed Ass=n, 620 S.W.2d 233 (Tex. App.CAmarillo 1981, no writ). 
In Dunn, the Amarillo court of appeals concluded the following
two documents did not contain essential terms of a guaranty agreement:

1.  A telegram from the corporation=s
executive vice president, stating,

I
WISH TO CONFIRM OUR VERBAL UNDERSTANDING REGARDING SEED REQUESTS, THE COMPANY
WILL BE PLEASED TO EXECUTE NOTES WE WILL GUARANTEE PAYMENT AS PROMISED.  REGARDING THIS CROP NEEDS.  SUNFLOWER SEEDS FOR 3,000 ACRES.  MILO SEEDS FOR 3,000 . . . . 

 

2.  A mailgram from the corporation=s
officer and 80 percent owner, stating,

 

 

WE
HAVE SALE ON LARGE PERCENT OF HAITIAN PLANTATION TO HAITIAN DEAL IS SUPPOSE TO
CLOSE JUNE 23 YOUR ACCOUNT IN LINE TO BE PAID IN FULL AT CLOSING

SINCERELY

LONNIE
DUNN

 

Id. at 235-36, 238.  The
Amarillo court observed the mailgram was not a promise by Dunn to pay the
account, but simply a statement the account was Ain line to be paid@ by an unspecified entity. 
Id. at 238.  The court also
observed the telegram did not state what was to be paid, who was to pay it, or
the terms of the Apayment as promised.@  Id.  In contrast, as discussed above, Lopez=s
September 25 letter states he (Lopez) promises to pay Saco=s
liabilities to MIP.  Dunn is
distinguishable.








Because
the September 25 letter set forth the essential terms to establish an
enforceable guaranty, we sustain issue three.

Issue
Four: Whether there was Consideration for the Guaranty Agreement

Like
any contract, a guaranty agreement must be supported by consideration.  Hargis v. Radio Corp. of Amer., Elec.
Components, 539 S.W.2d 230, 232 (Tex. Civ. App.CAustin
1976, no writ).  Consideration Aconsists
of either a benefit to the promisor or a detriment to the promisee.  The detriment must induce the making of the
promise, and the promise must induce the incurring of the detriment.@  Roark v. Stallworth Oil & Gas, Inc.,
813 S.W.2d 492, 496 (Tex. 1991) (citations omitted).  Consideration for a guaranty agreement is
usually either the sufferance of a detriment by the creditor or a benefit
conferred on the primary debtor.  Hargis,
539 S.W.2d at 232. 

When,
as in the present case, the parties enter into the guaranty independent of the
transaction that initially caused an obligation, consideration independent of
the obligation must support the guaranty. 
Gooch, 902 S.W.2d at 185. 
The consideration need not pass to the guarantor; consideration is
sufficient if the primary debtor receives some benefit.  Beltran v. Groos Bank, N.A., 755
S.W.2d 944, 948 (Tex. App.CSan Antonio 1988, no writ); see Smith v. Christley, 755
S.W.2d 525, 532 (Tex. App.CHouston [14th Dist.] 1988, writ denied), disapproved on
other grounds by Van Allen v. Blackledge, 35 S.W.3d 61, 65 n.3 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied).  An
agreement to continue doing business with a party confers a benefit on that
party.  Gooch, 902 S.W.2d at 185.

In
the present case, MPI had stopped shipping product to Sacos when MPI=s
owner wrote Lopez requesting Lopez=s personal guaranty. 
After receiving Lopez=s September 25 letter, MPI resumed shipping product to Sacos,
sending additional shipments valued at approximately $200,000.  Lopez=s guaranty was supported by consideration.  See Gooch, 902 S.W.2d at 185.

We
sustain issue four.








Conclusion

We
conclude Lopez=s September 25 letter is an unambiguous and enforceable
personal guaranty of Saco=s debt to MPI.  We
therefore sustain MPI=s issues one, three, and four. 
Accordingly, we reverse that portion of the judgment denying recovery to
MPI in its suit against Lopez and render judgment for MPI and against Lopez, as
guarantor, in the amount of $962,139.79, plus pre-judgment and post-judgment
interest.  The remainder of the judgment
is not before the court and is unaffected by this decision.

 

 

 

 

/s/        John
S. Anderson

Justice

 

 

Judgment rendered and Majority and
Concurring Opinions filed March 6, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.  (Frost, J.,
concurring).

 

 











[1]  Except in
quoted material, we use Aguaranty@ to
refer to the act of promising and to the promise; we use Aguarantee@ to
refer only to the person to whom the promise is made, in this case MPI.  See Black's
Law Dictionary 705 (6th ed.1990) (defining Aguarantee@ and Aguaranty@).





[2]  Before trial,
Sacos withdrew its answer and permitted a default judgment to be taken against
it.  





[3]  During
Burgower=s testimony, Carrera=s first
name was transcribed as AClaudia.@  Given an earlier transcription as AClaudio,@ and the
references to AMr. Carrera,@ we use
the designation, AClaudio.@





[4]  Lopez possessed
authority to give a guaranty on behalf of Sacos.





[5]  In National
Union Fire Insurance Co. v. CBI Industries, Inc., the supreme court
explained:

 

 An ambiguity in
a contract may be said to be Apatent@ or Alatent.@  A patent ambiguity is evident on the face of
the contract.  A latent ambiguity arises
when a contract which is unambiguous on its face is applied to the subject
matter with which it deals and an ambiguity appears by reason of some
collateral matter.  If a latent ambiguity
arises from this application, parol evidence is admissible for the purpose of
ascertaining the true intention of the parties as expressed in the agreement.

 

907
S.W.2d 517, 520 (Tex. 1995) (citations
and footnote omitted).  The court
provided the following example of a latent ambiguity: A[I]f a contract called for goods to be delivered to >the green house on Pecan Street,= and there were in fact two green houses on the
street, it would be latently ambiguous.@  Id. at 520 n.4.  Lopez is not claiming a latent ambiguity in
the present case.





[6]  In support,
Lopez cites Austin Hardwoods, Inc. v. Vanden Berghe, 917 S.W.2d 320, 323
(Tex. App.CEl Paso
1995, writ denied).  Referring to the
multi-purpose form used for credit applications in the case before it, the El
Paso court of appeals wrote:

 

The fact that the agreement was for extension of
credit to FISI does not create a conflict between the guaranty paragraph and
the rest of the application.  The
application is by definition a guarantee agreement whereby a third person
undertakes to answer for the debt of another. 
FISI stood as the primary obligor with Vanden Berghe as guaranty in the
event that FISI failed to pay.

Id.





[7]  The parties
agree the guaranty agreement in this case is within the statute of frauds.  As discussed in issue four, below, the
consideration for the guaranty flowed to Sacos, rather than to Lopez.  This aspect of the guaranty brings it within
the statute of frauds.  See Cooper
Petroleum Co. v. La Gloria Oil & Gas Co., 436 S.W.2d 889, 896 (Tex.
1969) (holding when only benefit guarantor received from continued credit sales
was as one of stockholders, benefit was too remote and indirect to be
enforceable as an original undertaking and promised guaranty was within statute
of frauds).