Reversed and Remanded and Memorandum Opinion filed August 5, 2003













Reversed and
Remanded and Memorandum Opinion filed August 5, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00291-CV

____________

 

PHIL WATKINS, P.C., Appellant

 

V.

 

THE KRIST LAW FIRM, P.C., Appellee

 

________________________________________________

 

On Appeal from
the 129th District Court

Harris County, Texas

Trial Court
Cause No. 01-36695

 

________________________________________________

 

M E M O R A
N D U M   O P I N I O N

            This is a breach-of-contract case in
which appellant Phil Watkins, P.C. challenges a summary judgment based on the
trial court’s determination that a one-page letter agreement between Phil
Watkins, P.C. and appellee The Krist
Law Firm, P.C. was supported by consideration and is unambiguous.  Although we find the agreement was supported
by consideration, we hold that it is ambiguous and so reverse the trial court’s
judgment, and remand this case for further proceedings consistent with this
opinion.  

 

 








                                                                        I.  Factual and Procedural Background

            At issue in this breach-of-contract
dispute is the extent, if any, to which Krist can
recover attorney’s fees and expenses based on its representation of two former
clients subsequently represented by Watkins. 
Krist represented Kinley
Sorrells, Sides, Inc., and other plaintiffs in a
lawsuit filed against E.I. DuPont de Nemours &
Company, alleging damages to their pecan orchards caused by the Benlate 50 DF® fungicide manufactured by DuPont (hereafter, the “DuPont
Suit”).  Krist
claims that, while acting on behalf of these clients, it reached a settlement
agreement with DuPont under which each plaintiff
would receive $200 per affected acre owned by the clients plus an amount to be
calculated under a “most-favored-nations provision.”  Krist asserts that,
under this most-favored-nations provision, Kinley Sorrells and Sides, Inc. (collectively, the “Clients”)
would have received an additional amount equal to the difference, if any,
between the $200 paid and the average per acre value paid by DuPont in the highest 25% of pre-verdict settlements that DuPont paid between the date on which the Clients signed
their releases and December 31, 2000, in pecan cases in Texas alleging damage
from Benlate®. 

            Krist
claims that the Clients initially consented to this settlement but then
discharged Krist without just cause and without Krist relinquishing its right to reimbursement of expenses
plus a 40% fee interest in the Clients’ claims. 
Watkins asserts that the Clients discharged Krist
for just cause and that the Clients never consented to any proposed settlement
negotiated by Krist. 
Watkins claims that the Clients assured Watkins they did not owe any
obligation to Krist and that Krist
had told them to get another lawyer if they did not like the settlement
proposed by Krist. 
In any event, after the Clients approached Watkins about representing
them in their claims against DuPont, Watkins asked Krist if the Clients had any financial obligation to Krist.  After
communications with Kevin Krist, a lawyer employed by
the Krist firm, Watkins received the letter dated November 22, 1999, which
forms the entire basis for the contract claim in this case.  The body of this letter reads in its
entirety:

            Thank you for your
correspondence of October 12, 1999 relative to Kinley Sorrells and the Sides. [sic]  We certainly
don’t have any problem with you assuming representation of these parties since
they have discharged us.  Nevertheless,
they did discharge us in the context of us having reached a settlement
agreement with DuPont to which they initially
consented.  Our suggestion is as follows:
if the cases are resolved by your firm in such a fashion as to allow for a
recovery on their behalf when none would have existed under the terms of our
proposed agreement, then we will forfeit all of our fees and expenses.  On the other hand, if circumstances are such
that our proposed settlement agreement would have resulted in the same or
greater recovery than you eventually achieve, then we would insist upon a full
fee and reimbursement of expenses.

            Please let me have your thoughts on this as soon as
possible as the judge is pressing for substitution of new counsel in order to
keep the matter from stagnating on his docket.

            Kevin Krist
testified that Phil Watkins expressed agreement to these terms during a
telephone conversation.  Furthermore,
Phil Watkins later wrote to the Krist firm, “I will
not forget the agreement in your letter of November 22, 1999.” 
Watkins substituted in the DuPont Suit as new
counsel for the Clients and arranged for these claims to be litigated in the
counties where the respective orchards are located.  Watkins eventually obtained settlements for
the Clients in an amount greater than the Clients would have obtained under the
settlement proposed by Krist.  When Watkins refused to pay Krist its fees and expenses, Krist
sued Watkins and the Clients.  

            Krist
alleged a variety of claims against Watkins and the Clients, and all defendants
filed motions to transfer venue.  Watkins
did not set its venue motion for hearing or obtain a ruling on it.  Meanwhile, Krist
moved for partial summary judgment alleging that the one-page letter agreement
was unambiguous and that, under its terms, Krist was
entitled to recover from Watkins $544,411 plus attorney’s fees.  The trial court granted summary judgment as
to liability and damages on Krist’s contract claim
but denied the motion as to attorney’s fees. 
After Krist nonsuited
its other claims against Watkins and all its claims against the Clients, and
after Krist asked for a final judgment that awarded
no attorney’s fees, the trial court signed a final judgment awarding Krist $544,411 plus postjudgment
interest. 

                                                                                               II.  Issues and Analysis

A.        Did the trial court err by
not ruling on the motions to transfer venue before granting summary judgment?

            In part of its ninth issue, Watkins
asserts the trial court erred in failing to conduct a hearing on the
defendants’ motions to transfer venue before ruling on Krist’s
motion for summary judgment.  Watkins
objected to the trial court hearing Krist’s motion
for summary judgment before ruling on these motions.  However, Watkins has not cited and we have
not found any indication in the record that Watkins ever requested that its
motion to transfer venue be set for hearing or submission or that this motion
was heard or set for submission.  As movant, Watkins had the duty to request a hearing on its
motion to transfer, and, by failing in this duty, Watkins waived its motion to
transfer venue.  See Tex. R. Civ. P. 87 (1) (“The movant
has the duty to request a setting on the motion to transfer”); Grozier v. L-B Sprinkler & Plumbing Repair,
744 S.W.2d 306, 309–12 (Tex. App.—Fort Worth 1988, writ denied) (holding that
appellant waived his venue motion by failing to pursue a hearing on it before
the trial court granted summary judgment). 
As to the Clients’ motions to transfer venue, even if Watkins had standing
to complain about the trial court’s failure to rule on these motions before
ruling on Krist’s motion for summary judgment, this
issue would be moot because Krist has nonsuited its claims against the Clients.  Therefore, this court is incapable of ordering
the trial court to hear the Clients’ motions on remand because the Clients are
no longer parties in this case. 
Accordingly, we overrule the ninth issue to the extent it complains of
the trial court’s failure to rule on the motions to transfer venue.

B.        Was
there consideration for the contract?

            In
the sixth issue, Watkins asserts the trial court erred in granting summary
judgment because there was no consideration for the contract.  Watkins argues there was no detriment to Krist in entering into the agreement, and thus no
consideration to support it.  We
disagree.  Watkins states that the
Clients told him they had no obligation to Krist and
that he called Krist to confirm this
representation.  The contract resulted
from the ensuing communications between Krist and
Watkins.  Although Watkins and the
Clients contend the Clients owed Krist nothing after
they discharged that firm, the language of the agreement itself shows that Krist was still asserting its rights to recover attorney’s
fees and expenses out of any settlement the Clients obtained from resolution of
the DuPont Suit. 
By compromising and limiting its rights to seek attorney’s fees, for
example, its right to claim a full 40% fee interest in any settlement reached
by Watkins on the Clients’ behalf, Krist suffered a
detriment, and so the contract was supported by sufficient consideration.  See
Northern Nat. Gas Co. v. Conoco, Inc., 986 S.W.2d
603, 607 (Tex. 1998); Leonard v. Texaco, Inc., 422 S.W.2d 160,
165 (Tex.
1967).  Accordingly, we overrule the
sixth issue.

C.        Is the contract ambiguous?

            Under its fourth issue, Watkins
argues that the contract unambiguously requires Krist
to forfeit all of its claims to fees and reimbursement of expenses if, as
turned out to be the case, Watkins obtained a better settlement for the Clients
than the settlement allegedly proposed by Krist.  Watkins also urges that, if we disagree with
this contention, we should find the contract to be ambiguous.  Krist responds by
arguing that the contract unambiguously requires Krist
to forfeit only its claims to fees in any recovery that the Clients realize in
excess of the settlement allegedly proposed by Krist.  Krist also asserts
that Watkins has waived its right to assert ambiguity on appeal by agreeing in
the trial court that the contract is unambiguous.

            As a preliminary matter, any
agreement in the trial court by Watkins and Krist
that the contract is unambiguous does not prevent this court from concluding
that the contract is ambiguous.  See City of Bunker Hill Village v. Memorial
Villages Water Auth., 809 S.W.2d 309, 310–11 (Tex. App.--Houston [14th
Dist.] 1991, no writ) (reversing summary judgment because the contracts in
question were ambiguous and holding that agreement of parties that a contract
is unambiguous does not prevent an appellate court from finding ambiguity under
the ordinary rules of contract construction). 
Therefore, in evaluating the fourth issue, we must first determine if
the contract is ambiguous.

            If a written instrument is so worded
that it can be given a certain or definite legal meaning or interpretation,
then it is not ambiguous and it can be construed as a matter of law.  Lenape Resources Corp. v. Tennessee Gas Pipeline
Co., 925 S.W.2d 565, 574 (Tex.1996). If its meaning is uncertain and
doubtful or it is reasonably susceptible to more than one meaning, taking into
consideration circumstances present when the particular writing was executed,
then it is ambiguous and its meaning must be resolved by a finder of fact.  See id.
In construing a written contract, our primary concern is to ascertain the true
intentions of the parties as expressed in the written instrument.  See id.  This court need not embrace strained rules of
construction that would avoid ambiguity at all costs.  See id.  If the contract is ambiguous, then the trial
court erred in granting summary judgment because the interpretation of an
ambiguous contract is a question for the finder of fact.  See
Coker v. Coker, 650 S.W.2d 391, 394–95 (Tex.
1983).  

            The contract, addressing the issue
of Krist’s rights against any future settlement by
the Clients, states:

[I]f the cases are resolved
by [Watkins] in such a fashion as to allow for a recovery on [the Clients’]
behalf when none would have existed under the terms of [Krist’s]
proposed agreement, then [Krist] will forfeit all of
[its] fees and expenses.  On the other
hand, if circumstances are such that [Krist’s]
proposed settlement agreement would have resulted in the same or greater recovery than [Watkins] eventually achieve[s], then [Krist] would insist upon a full fee and reimbursement of
expenses.                          

            It is undisputed that the settlement
Watkins achieved for the Clients resulted in a recovery for the Clients that
was greater than the recovery the Clients would have realized under Krist’s proposed settlement agreement.  Therefore, the second sentence above cannot
apply.  Under the circumstances present
when the contract was made, the meaning of the first sentence is uncertain and
doubtful.  The trial court apparently
accepted Krist’s argument that the contract
unambiguously forfeits Krist’s fees only to the
extent that Watkins’s settlement for the Clients exceeds Krist’s
proposed settlement.  This construction
is problematic because it conflicts with the ordinary meaning of “[Krist] will forfeit all of [its] fees and expenses.”  On the other hand, it does not seem likely
that Krist would agree to forfeit a claim of more
than half a million dollars because Watkins achieved a better settlement than
the Clients would have received under Krist’s
proposed settlement.  Though there is a
dispute as to whether the Clients discharged Krist
with just cause, even if it were determined that they did, Krist
still would have a claim against the Clients based on quantum meruit.  See Rocha v. Ahmad, 676 S.W.2d 149, 156 (Tex. App.—San Antonio
1984, writ dism’d).  It would be unusual for Krist
to have agreed to waive its entire claim simply because Watkins achieved a
better settlement.  Though we may not
rewrite the contract to insert provisions the parties could have included, we
must construe the contract from a utilitarian standpoint, bearing in mind the
particular business activity sought to be served.  See Lenape Resources Corp., 925 S.W.2d at
574; Tenneco, Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 646 (Tex. 1996).  

            If the first sentence required Krist, under certain circumstances, to completely waive its
claim to more than $500,000 in fees and cost reimbursement, then it would be
important to know under what circumstances this drastic result would occur.  However, the language of the first sentence
is opaque in this regard, stating that it is triggered “if the cases are
resolved by [Watkins] in such a fashion as to allow for a recovery on [the
Clients’] behalf when none would have existed under the terms of [Krist’s] proposed agreement.” It is undisputed that the
“terms of [Krist’s] proposed agreement” included an unconditional  recovery
of $200 per affected acre owned by the settling party.  Therefore, there could have been no
circumstances under which “[no recovery] would have existed under the terms of
[Krist’s] proposed agreement.”  

            Watkins asserts that the first
sentence is triggered if Watkins obtains a settlement for more money than the
Clients would have received under Krist’s proposed
settlement.  Krist
asserts that it waived its rights only as to any recovery in excess of what the
Clients would have recovered under Krist’s proposed
settlement.  We presume that the parties
did not intend an impossible condition.  See Page v. Superior Stone
Prods., Inc., 412 S.W.2d 660, 663 (Tex. Civ.
App.—Austin 1967, writ ref’d n.r.e.).  If we construe the condition in the first
sentence to mean “to the extent the Clients recover more than they would have
under Krist’s proposed settlement,” then this
language, combined with the phrase “full
fee and reimbursement of expenses” in the second sentence (emphasis added)
might favor Krist’s construction.  On the other hand, if we construe the
condition to mean “if the Clients recover more when represented by Watkins than
they would have under Krist’s proposed settlement,”
then Watkins’s construction might be favored. 
Given the uncertain and doubtful meaning of the contract, we hold that
it is ambiguous.  See Lenape Resources Corp., 925 S.W.2d at 574
(holding contract provision to be ambiguous); Coker, 650 S.W.2d at 393–94 (holding that contract language was
unclear and ambiguous); A.W. Wright &
Associates, P.C. v. Glover, Anderson, Chandler & Uzick,
L.L.P., 993 S.W.2d 466, 470 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that language in referral
contracts between attorneys was uncertain and doubtful and therefore
ambiguous);  Gibson v. Bentley, 605 S.W.2d 337, 338–39 (Tex. Civ.
App.—Houston [14th Dist.] 1980, writ ref’d n.r.e.) (holding that condition
triggering provision for sharing amounts to be recovered in lawsuit was
susceptible of two irreconcilable interpretations and was ambiguous).  Accordingly, we sustain the fourth issue to
this extent, overrule the remainder of the fourth issue, reverse the trial
court’s judgment, and remand this case to the trial court so that the trier of fact may determine the true intent of the
parties.  See Coker, 650 S.W.2d at 394–95.

                                                                                                      III.  Conclusion

            Watkins
waived its motion to transfer venue by failing to set it for hearing before the
trial court’s ruling on Krist’s motion for summary
judgment.  The contract, though supported
by sufficient consideration, is ambiguous. 
Therefore, we reverse the trial court’s judgment and remand this case to
the trial court so that the trier of fact may
determine the true intent of the parties.[1] 

 

 

 

                                                                                    

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

Judgment rendered and Memorandum
Opinion filed August 5,
 2003.

Panel consists of Justices Yates,
Anderson, and Frost.

 

 











            [1]  Having ruled on these issues, we need not
address Watkins’s other issues as to why the trial court should not have
granted summary judgment — its first, second, third, fifth, seventh, eighth,
and tenth issues, as well as the part of the ninth issue dealing with Watkins’s
motion to continue the summary-judgment hearing.